Diana L. SPIRT, individually and on behalf of all others similarly situated, Plaintiff,

and

American Association of University Professors and Equal Employment Opportu-

nity Commission, Applicants for Intervention,

v.

TEACHERS INSURANCE AND ANNUITY ASSOCIATION, College Retirement Equities Fund, and Long Island University, Defendants,

and

Albert B. Lewis, Superintendent of Insurance, Insurance Department, State of New York, Supplemental Defendant.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

and

Deborah Moshowitz, Susan Alexion, Renata Clynes, individually and on behalf of all others similarly situated, American Association of University Professors, and American Nurses' Association, Applicants for Intervention,

v.

Albert B. LEWIS, individually and as Superintendent of Insurance, Insurance Department, State of New York, Teachers Insurance and Annuity Association, College Retirement Equities Fund, Long Island University, and Diana L. Spirt, Defendants.

Nos. 74 Civ. 1674(RJW), 81 Civ. 881(RJW).

United States District Court, S. D. New York.

March 19, 1982.

---

Kenneth D. Wallace, New York City, for Diana L. Spirt as Plaintiff in 74 Civ. 1674(RJW) and as Defendant in 81 Civ. 881(RJW).

Barbara D. Underwood, John L. Pettinger, Jr., New Haven, Conn., for applicant-for-intervention American Ass'n of University Professors.

E. E. O. C., New York District Office, New York City, E. E. O. C., Washington, D. C., for E. E. O. C. as applicant for intervention in 74 Civ. 1674(RJW) and as plaintiff in 81 Civ. 881(RJW); Cherie Gaines, Regional Atty., Bert A. Bunyan, Supervisory Trial Atty., Issie L. Jenkins, Deputy General Counsel James N. Finney, Associate General Counsel Ruth Weyand, Equal Pay Act Counsel, of counsel.

Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N. C., for applicant-for-intervention American Nurses' Ass'n; Jonathan R. Harkavy, Greensboro, N. C., Herbert Robinson, Edward W. Kriss, of counsel.

American Civil Liberties Union Foundation, New York City, for Deborah Moshowitz, Susan Alexion, and Renata Clynes as applicants for intervention in 81 Civ. 881(RJW) and as amici curiae in 74 Civ. 1674(RJW); Mary L. Heen, Isabelle Katz Pinzler, of counsel.

Rogers & Wells, New York City, for defendants Teachers Ins. and Annuity Ass'n and College Retirement Equities Fund; William R. Glendon, Guy C. Quinlan, James B. Weidner, James W. Paul, John M. Quitmeyer, New York City, of counsel.

Judith E. Tytel, Gen. Counsel, Long Island University, Greenvale, N. Y., and Webster & Sheffield, New York City, for defendant Long Island University; Donald J. Cohn, Miriam L. Sparrow, New York City, of counsel.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendant Albert B. Lewis; Neal Johnston, Robert S. Hammer, Asst. Attys. Gen., New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

## BACKGROUND

The above-captioned actions both allege sex discrimination in the operation of certain retirement annuity plans administered by the Teachers Insurance and Annuity Association ("TIAA") and the College Retirement Equities Fund ("CREF"). Plaintiff in 74 Civ. 1674(RJW) (hereinafter "the *Spirt* action") is Diana L. Spirt, a professor at Long Island University ("LIU"). Spirt is required, as a condition of her employment

by LIU, to participate in the TIAA and CREF retirement plans. Plaintiff in 81 Civ. 881(RJW) (hereinafter "the *Lewis* action") is the Equal Employment Opportunity Commission (the "EEOC"). TIAA, CREF, and LIU are named as defendants in the *Spirt* action. Albert B. Lewis, Superintendent of the New York State Department of Insurance ("Superintendent Lewis"), is the principal defendant in the *Lewis* action and is named as a supplemental defendant in the *Spirt* action. TIAA, CREF, LIU, and Spirt, plaintiff in the *Spirt* action, are named as defendants in the *Lewis* action on the theory that they have an interest in the outcome of the *Lewis* action such that their joinder is required by Rule 19(a)(2), Fed.R. Civ.P.

The *Spirt* action has been the subject of three prior decisions of the Court. In an opinion filed on July 1, 1976 ("*Spirt I*"), the Court denied Spirt's motion for class certification, denied the joint motion of TIAA and CREF for partial summary judgment, and granted a TIAA–CREF motion to join LIU as a defendant. *See* 416 F.Supp. 1019. The Court filed a second opinion on August 9, 1979 ("*Spirt II*"), whereby Spirt's motion for summary judgment was granted in part and denied in part, TIAA's cross-motion for summary judgment was granted, and CREF's cross-motion for summary judgment was denied. *See* 475 F.Supp. 1298. In a third opinion, this one filed on September 12, 1979 ("*Spirt III*"), the Court denied CREF's motion for reargument of the decision rendered by the Court in *Spirt II*. *See* 475 F.Supp. 1316.

The Court assumes familiarity with its prior decisions in the *Spirt* action. In order to explain the present posture of the two actions that are the subjects of today's opinion, however, the Court must describe certain events that occurred after September 12, 1979, the date of *Spirt III*. On September 18, 1979, the Court entered a final judgment ("the *Spirt* judgment") based on its previous opinions in the *Spirt* action. Notices of appeal from this judgment were filed by TIAA and CREF on October 11, 1979, by LIU on October 12, 1979, and by Spirt on October 18, 1979. On January 8, 1980, the Court of Appeals, pursuant to a stipulation among the parties, ordered that the appeals be withdrawn from active consideration in order that this Court could supervise the settlement negotiations in which the parties were then engaging. Under this order, the Court of Appeals retained jurisdiction over the *Spirt* action.

In the course of the settlement negotiations, TIAA and CREF proposed to adopt tables that would eliminate sex-based differentiation in the benefits received by participants in the TIAA and CREF retirement plans on account of their *future* contributions to these plans. In December 1979, TIAA and CREF submitted a set of such "merged-gender mortality tables" ("Unisex I") to Superintendent Lewis for approval. Superintendent Lewis approved Unisex I in February 1980. However, the EEOC informed TIAA and CREF that, for several reasons, it viewed Unisex I to violate both Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e—2000e–17, and the Equal Pay Act of 1963 ("the Equal Pay Act"), 29 U.S.C. § 206(d).

Thereafter, TIAA, CREF, and the EEOC agreed to modify Unisex I in certain respects. On November 5, 1980, the EEOC issued an opinion letter stating that the revised tables ("Unisex II") would not, if adopted, violate Title VII or the Equal Pay Act. TIAA and CREF then submitted Unisex II to Superintendent Lewis for approval. In letters dated January 27, 1981, and February 5, 1981, Superintendent Lewis rejected Unisex II as to TIAA and CREF, respectively, on the ground that adoption of Unisex II would violate the New York Insurance Law.

TIAA and CREF then developed an entirely new plan with respect to future contributions ("Unisex III"), which plan also used merged-gender mortality tables. Unisex III was submitted to Superintendent Lewis for approval. On July 20, 1981, Superintendent Lewis approved Unisex III. However, the EEOC informed TIAA and CREF that it viewed Unisex III to be viola-

tive of both Title VII and the Equal Pay Act.

Meanwhile, on February 19, 1981, the Court of Appeals, pursuant to a stipulation among the parties, had ordered that the *Spirt* action be remanded to this Court for two purposes: (1) to permit TIAA and CREF to raise a particular Title VII defense, known as the "good-faith reliance defense," that they had not previously argued to this Court, and (2) to permit Spirt to seek leave to join Superintendent Lewis as a party in the *Spirt* action so that this Court might consider issues raised by Superintendent Lewis' refusal to approve Unisex II. In an order dated February 23, 1981, this Court, pursuant to another stipulation among the parties, granted Spirt leave to serve and file a supplemental complaint naming Superintendent Lewis as a defendant. These facially innocuous events caused a flood of motion papers to descend upon the Court over a period of some eight months, the total volume of which has been duplicated by few, if any, of the hundreds of cases heard by this member of the Court during his ten years on the bench.

Spirt filed her supplemental complaint on February 23, 1981. On February 24, 1981, Spirt filed a motion, pursuant to Rule 56, Fed.R.Civ.P., for summary judgment against Superintendent Lewis. TIAA and CREF cross-moved, pursuant to Rule 12(b)(6), Fed.R.Civ.P., for an order dismissing the supplemental complaint. Superintendent Lewis filed a memorandum with the Court wherein he opposed Spirt's motion for summary judgment and joined in the TIAA–CREF motion to dismiss. On March 30, 1981, TIAA and CREF moved, pursuant to Rule 60(b), Fed.R.Civ.P., for an order partially relieving CREF from the *Spirt* judgment. The latter TIAA–CREF motion is based on the "good-faith reliance defense" noted earlier. Spirt filed opposition to the TIAA–CREF cross-motion to dismiss her supplemental complaint, but has not filed opposition to the TIAA–CREF motion for partial relief from the *Spirt* judgment.

By this time, the new developments in the *Spirt* action had caught the attention of a number of persons and entities not parties in that litigation. On February 13, 1981, the EEOC filed the complaint in the *Lewis* action. An amended complaint was filed on March 13, 1981. The *Lewis* action seeks to enjoin Superintendent Lewis from applying the New York Insurance Law in a manner that the EEOC contends conflicts with the United States Constitution, Title VII, and the Equal Pay Act. Pursuant to Rule 15 of the Rules for the Division of Business Among District Judges of the Southern District of New York, the *Lewis* action was assigned to this member of the Court as "related" to the *Spirt* action. The EEOC then moved, in both the *Spirt* action and the *Lewis* action, for an order, pursuant to Rule 42(a), Fed.R.Civ.P., consolidating the *Spirt* action and the *Lewis* action. By a motion filed May 21, 1981, the EEOC moved, pursuant to Rule 24, Fed.R.Civ.P., for leave to intervene as a plaintiff in the *Spirt* action.

In a notice of motion filed April 21, 1981, Deborah Moshowitz, Susan Alexion, and Renata Clynes moved, pursuant to Rule 24, Fed.R.Civ.P., for leave to intervene in the *Lewis* action as plaintiffs on behalf of themselves and all others similarly situated. In a separate notice of motion, these three individuals moved for an order granting them leave to participate in the proceedings before the Court in the *Spirt* action as *amici curiae*. The Court granted the latter motion on December 23, 1981. Moshowitz, Alexion, and Clynes have also joined in the motions for consolidation filed by the EEOC in the *Spirt* action and the *Lewis* action. For its part, the EEOC has joined in the Moshowitz-Alexion-Clynes motion for leave to intervene in the *Lewis* action.

The American Association of University Professors ("the AAUP") filed two motions, one on May 12, 1981, and one on July 9, 1981. The first of these motions sought an order, pursuant to Rule 24, Fed.R.Civ.P., granting the AAUP leave to intervene in the *Lewis* action. The second motion sought a similar order granting the AAUP leave to intervene in the *Spirt* action.

During the spring and summer months of 1981, briefs and affidavits in support of or in opposition to the above-described motions were filed with the Court on an almost daily basis. The Court heard nearly two days of oral argument on these motions. On July 16, 1981, the Court informed counsel that it would accept no submissions on the then-pending motions after August 6, 1981. Six days later, the EEOC moved for summary judgment against Superintendent Lewis in both the *Spirt* action and the *Lewis* action. The Court, concerned that these motions would trigger another round of brief writing by the various interested parties, which would further delay the Court's decision of the motions already pending before it, and aware that the motion filed in the *Spirt* action would have to be denied if the EEOC were not granted leave to intervene in that action, determined to adjourn the EEOC's summary judgment motions until after the date of the Court's decision on the previously filed motions.

On August 12, 1981, the American Nurses' Association ("the ANA"), filed a motion, pursuant to Rule 24, Fed.R.Civ.P., seeking leave to intervene in the *Lewis* action. Given the similarity of this motion to others that had already been filed and fully briefed, the Court determined not to adjourn it in similar fashion to the EEOC's summary judgment motions. On December 11, 1981, Moshowitz, Alexion, and Clynes, applicants for intervention in the *Lewis* action, moved for summary judgment, pursuant to Rule 56, Fed.R.Civ.P., against Superintendent Lewis in the *Lewis* action. Since this motion is substantially similar to the summary judgment motions filed by the EEOC in both the *Spirt* action and the *Lewis* action, and since it would be rendered moot if Moshowitz, Clynes, and Alexion were not granted leave to intervene in the *Lewis* action, the Court determined that this motion should, in identical fashion to the EEOC's summary judgment motions, be adjourned until after the date of the Court's decision on the previously filed motions.

By today's opinion, the Court decides all of the motions that have been filed in the *Spirt* action and the *Lewis* action except for the summary judgment motion filed by the EEOC in the *Lewis* action. For the reasons stated in the discussion that follows, the EEOC's motion for leave to intervene in the *Spirt* action is granted in part and denied in part, the EEOC's motion in the *Spirt* action for summary judgment against Superintendent Lewis is denied, the EEOC's motions to consolidate the *Spirt* action and the *Lewis* action are denied, the Moshowitz-Alexion-Clynes motion for leave to intervene in the *Lewis* action is denied, the Moshowitz-Alexion-Clynes motion in the *Lewis* action for summary judgment against Superintendent Lewis is denied, the AAUP's motion for leave to intervene in the *Lewis* action is denied, the ANA's motion for leave to intervene in the *Lewis* action is denied, the AAUP's motion for leave to intervene in the *Spirt* action is granted in part and denied in part, Spirt's motion for summary judgment against Superintendent Lewis is denied, the TIAA–CREF motion to dismiss Spirt's supplemental complaint is granted, and the TIAA–CREF motion for partial relief from the *Spirt* judgment is denied.

## DISCUSSION

The Court has determined to discuss the motions that are the subject of today's opinion in the following sequence. First, the Court deals with the EEOC's motions to consolidate and the various motions to intervene filed by the EEOC, the AAUP, Moshowitz, Alexion, Clynes, and the ANA. Second, the Court discusses Spirt's motion for summary judgment against Superintendent Lewis and the TIAA–CREF cross-motion to dismiss Spirt's supplemental complaint. Third, the Court deals with the TIAA–CREF motion for partial relief from the *Spirt* judgment.

### I. Motions to Intervene and Motions to Consolidate

While the various motions to intervene filed in the *Spirt* action and the *Lewis* action turn on some of the same questions,

many of these motions are sufficiently distinct from the others that they must be analyzed separately from the others. Since the intervention motions, considered *in toto*, seek leave to intervene under Rules 24(a)(1), 24(a)(2), 24(b)(1), and 24(b)(2), Fed.R.Civ.P., analysis of these motions takes the Court into a necessarily lengthy, and possibly unprecedented, excursion into the entire parameters of Rule 24 of the Federal Rules of Civil Procedure. The EEOC motions to consolidate the *Spirt* action and the *Lewis* action must, in turn, be considered separately from all the intervention motions. The Court has organized its discussion of these motions as follows: (A) the EEOC motion to intervene in the *Spirt* action; (B) the EEOC motions to consolidate the *Spirt* action and the *Lewis* action; (C) the Moshowitz-Alexion-Clynes, AAUP, and ANA motions to intervene in the *Lewis* action; and (D) the AAUP motion to intervene in the *Spirt* action.

### A. The EEOC Motion to Intervene in the Spirt Action

The EEOC has moved, pursuant to Rule 24(b)(1), Fed.R.Civ.P., for leave to intervene as a plaintiff in the *Spirt* action. The EEOC's desire to intervene in the *Spirt* action is based on the failure of Spirt, plaintiff in the *Spirt* action, to oppose the TIAA–CREF motion for partial relief from the *Spirt* judgment. In the EEOC's view, the TIAA–CREF motion is based on an incorrect legal premise. Given that the *Spirt* action is not a class action, *see Spirt I, supra*, 416 F.Supp. at 1025, meaning that the Court has no obligation under Rule 23(e), Fed.R.Civ.P., the EEOC argues that the Court will have no choice but to endorse the allegedly incorrect legal premise that underpins the TIAA–CREF motion (by granting the TIAA–CREF motion as unopposed) unless the EEOC is permitted to intervene as a plaintiff in the *Spirt* action in order to oppose the TIAA–CREF motion. However, notwithstanding its rather narrow reason for seeking to intervene in the *Spirt* action, the EEOC's intervention motion seeks an order under which the EEOC (1) would not be bound by the *Spirt* judg-ment or by any findings of fact or conclusions of law previously made in the *Spirt* action, and (2) would be permitted to file a complaint alleging that TIAA has violated Title VII, notwithstanding the fact that the Court specifically held in *Spirt II* that "application of Title VII to TIAA in this case is precluded by the McCarran Act." 475 F.Supp. at 1304.

Under Rule 24(b)(1), "[u]pon timely application anyone may be permitted to intervene in an action ... when a statute of the United States confers a conditional right to intervene." Such a conditional right is conferred upon the EEOC by Title VII, which provides that, "[u]pon timely application, the court may, in its discretion, permit the [EEOC] ... to intervene in [a civil action brought under Title VII by a person claiming to be aggrieved by a violation of Title VII] upon certification that the case is of general public importance." 42 U.S.C. § 2000e–5(f)(1). In a statement filed with the Court, the EEOC has certified that the *Spirt* action is a case of "general public importance." Thus, the EEOC's motion for leave to intervene in the *Spirt* action under Rule 24(b)(1) should be granted if (1) the EEOC's application to intervene was "timely" filed within the meaning of 42 U.S.C. § 2000e–5(f)(1) and Rule 24; and (2) the circumstances of the *Spirt* action are such that the Court is inclined to exercise its discretionary power to issue an order granting the EEOC leave to intervene in the *Spirt* action. *See Women's Committee for Equal Employment Opportunity v. National Broadcasting Co.*, 71 F.R.D. 666, 671–72 (S.D.N.Y.1976).

■ The Court begins by analyzing whether the EEOC has made a sufficient showing to satisfy the second of the two requirements set forth above. In determining whether to exercise its discretion to permit a Rule 24(b)(1) intervention, the trial court must consider whether the proposed intervention will unduly delay or prejudice the adjudication of the rights of the original parties to the action, *see* Rule 24(b), Fed.R.Civ.P., and be attentive to the principle that "[d]istrict courts should not be nig-

gardly in allowing a government agency to intervene in cases involving a statute it is required to enforce; indeed, a hospitable attitude is appropriate," see Blowers v. Lawyers Co-operative Publishing Co., 527 F.2d 333, 334 (2d Cir. 1975) (per curiam); Sobel v. Yeshiva University, 438 F.Supp. 625, 627 (S.D.N.Y.1977). Given that the EEOC does not propose to be bound by the Court's decision in Spirt II, and that the EEOC's proposed complaint seeks legal relief that the Court denied Spirt in Spirt II by awarding summary judgment in favor of TIAA, it is apparent that an order allowing the broad intervention sought by the EEOC's motion would open the door to the relitigation of Spirt II and hence would severely threaten both to delay and to prejudice adjudication of the rights of the original parties to the Spirt action. Since such a broad order is in no way necessitated by the reason advanced by the EEOC in favor of granting it leave to intervene, namely, the EEOC's desire to oppose the TIAA–CREF motion for partial relief from the Spirt judgment, the Court is convinced that the issuance of such an order would be an improper exercise of its discretion under Rule 24(b)(1).

■ The Court observes, however, that there is ample authority for a district court faced with a Rule 24(b)(1) motion to impose conditions on its grant of intervention. See Ionian Shipping Co. v. British Law Insurance Co., 426 F.2d 186, 191–92 (2d Cir. 1970); 3B Moore's Federal Practice ¶ 24.-

10[4], at 24–396 (2d ed. 1981); 7A C. Wright & A. Miller, Federal Practice and Procedure § 1922, at 623–24 (1972). Specifically, the trial court may condition the grant of a motion for leave to intervene by requiring the intervenor to abide by the court's previous decisions, see, e.g., Fox v. Glickman Corp., 355 F.2d 161, 164 (2d Cir. 1965), cert. denied, 384 U.S. 960, 86 S.Ct. 1585, 16 L.Ed.2d 672 (1966), or by limiting the issues that the intervenor is permitted to contest, see, e.g., Benson v. Little Rock Hilton Inn, 87 F.R.D. 447, 449 (E.D.Ark.1980); Carroll v. American Federation of Musicians, 33 F.R.D. 353, 354 (S.D.N.Y.1963). For several reasons, the Court believes that it would be properly exercising its discretion under Rule 24(b)(1) were it to grant the EEOC leave to intervene in the Spirt action solely for the purpose of contesting the issue raised by TIAA–CREF motion for partial relief from the Spirt judgment. First, since the parties in the Spirt action agree that the Court has never decided the issue raised by the TIAA–CREF motion for relief from judgment, and since the Court decides that issue by today's opinion, the Court does not believe that the parties to the Spirt action would be threatened with undue delay in or prejudice to the adjudication of their rights were the EEOC granted leave to intervene as a plaintiff in the Spirt action with respect to this one issue. Second, such a limited intervention would, in the Court's view, fully respond to the EEOC's purported "need" to intervene in the Spirt action.[1]

---

1. The Court recognizes that TIAA and CREF reject the EEOC's proposition that, given Spirt's failure to oppose the TIAA–CREF motion for partial relief from the Spirt judgment, the Court will be unable to deny that motion unless the EEOC becomes a party to the Spirt action and files opposition to the TIAA–CREF motion. Indeed, the Court is frank to say that it has some doubts concerning the putative "need" for EEOC intervention in the Spirt action. Were the Court to grant the TIAA–CREF motion as unopposed, this decision would not be an adjudication of the legal issues raised by the motion, and thus would not prejudice the EEOC, as stare decisis or on any other theory, with respect to other cases presently being litigated by the EEOC. Further, while counsel for Spirt has filed no formal opposition to the TIAA–CREF motion, the fact is that, at oral

argument of this motion, counsel for Spirt and counsel for TIAA and CREF disagreed on the proper disposition of the TIAA–CREF motion. Transcript, June 2, 1981, at 214. Under the principles set forth by the Court in part II of today's opinion, then, there is sufficient adversity between Spirt on the one hand and TIAA and CREF on the other with respect to the TIAA–CREF motion to make the legal issue raised by the TIAA–CREF motion justiciable in the Spirt action even if the EEOC were not a party to the Spirt action.

Unfortunately for TIAA and CREF, there is no authority for the proposition that the EEOC must demonstrate a need for intervention in order to succeed on a Rule 24(b)(1) motion. Meyer v. Macmillan Publishing Co., 85 F.R.D. 149, 150 (S.D.N.Y.1980). Thus, even if TIAA and CREF were correct that the EEOC has

 Notwithstanding the foregoing, the Court may not permit the EEOC to intervene in the *Spirt* action, even in this limited manner, if the EEOC's motion to intervene was not "timely" filed within the meaning of 42 U.S.C. § 2000e–5(f)(1) and Rule 24. Generally, the timeliness of an application for intervention under Rule 24 is a question addressed to the sound discretion of the trial court, to be decided by reference to all the relevant circumstances. *United States v. International Business Machines Corp.*, 62 F.R.D. 530, 541 (S.D.N.Y. 1974). Specifically, whether a motion to intervene has been "timely" filed is to be judged not merely by the calendar, but also by reference to (1) the purpose for which intervention is sought, (2) the length of time the applicant for intervention knew of its interest in the suit before moving for leave to intervene, and (3) whether the requested intervention will delay the litigation or prejudice a party to the action. *See Michigan Association for Retarded Citizens v. Smith*, 657 F.2d 102, 105 (6th Cir. 1981); *Carey v. Klutznick*, 88 F.R.D. 249, 250 (S.D. N.Y.1980); *Evans v. Lynn*, 376 F.Supp. 327, 330 (S.D.N.Y.1974), *aff'd en banc*, 537 F.2d 589 (2d Cir. 1976), *cert. denied*, 429 U.S. 1066, 97 S.Ct. 797, 50 L.Ed.2d 784 (1977); *McCausland v. Shareholders Management Co.*, 52 F.R.D. 521, 524 (S.D.N.Y.1971).

 Not surprisingly, in light of the delay and prejudice that the grant of *post-judgment* intervention typically creates, the courts of this Circuit are not normally inclined to find such motions to have been "timely" made. *See, e.g., Crown Financial Corp. v. Winthrop Lawrence Corp.*, 531 F.2d 76, 77 (2d Cir. 1976) (per curiam); *Firebird Society of New Haven, Inc. v. New Haven*

*Board of Fire Commissioners*, 66 F.R.D. 457, 464–65 (D.Conn.), *aff'd mem.*, 515 F.2d 504 (2d Cir.), *cert. denied*, 423 U.S. 867, 96 S.Ct. 128, 46 L.Ed.2d 96 (1975). Nevertheless, it is beyond peradventure that post-judgment intervention motions are, in certain circumstances, "timely," *see, e.g., United Airlines, Inc. v. McDonald*, 432 U.S. 385, 396, 97 S.Ct. 2464, 2471, 53 L.Ed.2d 423 (1977), and that such circumstances may be presented where, as is the case here, intervention is sought with respect to a post-judgment proceeding that seeks to resolve a substantial problem in formulating the relief to be granted on account of the judgment, *see Hodgson v. United Mine Workers*, 473 F.2d 118, 129 (D.C.Cir.1972). Where post-judgment intervention is sought in order to participate in the relief or appellate phases of a litigation, the "timeliness" of the application to intervene must be determined by asking whether, in view of all the circumstances, the intervenor acted promptly after the entry of the judgment. *United Airlines, Inc. v. McDonald, supra*, 432 U.S. at 395–96, 97 S.Ct. at 2470–71. Here, the parties to the *Spirt* action agree that the issue raised by the TIAA–CREF motion for partial relief from the *Spirt* judgment was not presented to the Court prior to the commencement of the appeals from that judgment. Once the *Spirt* judgment was on appeal, the EEOC plainly could not have addressed a motion to intervene in the *Spirt* action to this Court. *See Rolle v. New York City Housing Authority*, 294 F.Supp. 574, 576 (S.D.N.Y.1969). Thus, the EEOC's opportunity to seek leave to intervene in the *Spirt* action with respect to the issue raised by the TIAA–CREF motion for relief from judgment first arose when the Court of Appeals remanded the *Spirt* action to

failed to articulate any real need to become a party to the *Spirt* action, this fact would not by itself control the Court's decision of the EEOC's motion to intervene, but would be one of several factors relevant to the Court's decision whether to exercise its discretion under Rule 24(b)(1). In fact, the EEOC has, by pointing out that its position with respect to the TIAA–CREF motion differs from that advanced by TIAA and CREF and also from that advanced by Spirt, demonstrated a real, if not compelling, need for its limited participation in

the *Spirt* action. Even if this need did not exist, however, the failure of any party to the *Spirt* action to show that delay or prejudice would flow from the limited intervention contemplated by the Court, when coupled with the judicial deference that should be given to the EEOC's decision that the *Spirt* action warrants the allocation of its limited resources, *see id.* at 150–51, would incline the Court to believe that its discretion would best be exercised by allowing the EEOC to intervene with respect to the issue raised by the TIAA–CREF motion.

this Court in order that TIAA and CREF might file a motion raising that issue. The EEOC moved to intervene less than two months after the TIAA–CREF motion was filed. As previously noted, the litigation of the *Spirt* action would not be delayed by allowing the EEOC to intervene to contest the issue raised by the TIAA–CREF motion for relief from judgment; further, no party to the *Spirt* action would be prejudiced by such a limited intervention. On the basis of all these circumstances, the Court finds that, insofar as the issue raised by the TIAA–CREF motion for relief from judgment is concerned, the EEOC moved to intervene "promptly" after entry of the *Spirt* judgment. The Court therefore holds that the EEOC's application for intervention was "timely" filed, within the meaning of 42 U.S.C. § 2000e–5(f)(1) and Rule 24, Fed.R.Civ.P., to the extent the EEOC seeks leave to intervene in order to oppose that motion.[2]

Accordingly, the EEOC's motion pursuant to Rule 24(b)(1), Fed.R.Civ.P., for leave to intervene in the *Spirt* action is granted in part and denied in part. The EEOC is granted leave to intervene as a plaintiff in the *Spirt* action only for the purpose of contesting the TIAA–CREF motion for partial relief from the *Spirt* judgment. With respect to the other issues pending before the Court in the *Spirt* action, the EEOC shall have leave to participate in the *Spirt* action as an *amicus curiae. See Blowers v. Lawyers Co-operative Publishing Co., supra*, 527 F.2d at 334. Since it has been denied leave to intervene in the *Spirt* action with respect to any issue involving Superintendent Lewis, the EEOC's motion in the *Spirt* action for summary judgment against Superintendent Lewis is denied.

### B. The EEOC Motions to Consolidate the Spirt Action and the Lewis Action

The EEOC has moved, in both the *Spirt* action and the *Lewis* action, for an order consolidating the *Spirt* action and the *Lewis* action pursuant to Rule 42(a), Fed.R.Civ.P. Moshowitz, Alexion, and Clynes have, notwithstanding the fact that they are not parties to either action, joined in those motions. The EEOC seeks, by its motions to consolidate, to have the *Spirt* action and the *Lewis* action consolidated for all purposes. Memorandum of Points and Authorities in Support of Motion of Equal Employment Opportunity Commission to Consolidate, May 4, 1981, at 2.

 Under Rule 42(a), a trial court may, "[w]hen actions involving a common question of law or fact are pending before [it]," "order [that] all the actions [be] consolidated." Thus, an order of consolidation such as the EEOC seeks here is only permissible (1) if the actions in question involve a common question of law or fact, *see Flintkote Co. v. Allis-Chalmers Corp.*, 73 F.R.D. 463, 464–65 (S.D.N.Y.1977), and (2) if the court to which the consolidation motion is addressed has jurisdiction for all purposes over each of the actions in question, *see In re Penn Central Commercial Paper Litigation*, 62 F.R.D. 341, 344 (S.D.N.Y.1974),

---

**2.** The Court observes that, even if it were inclined to exercise its discretion to allow the EEOC to intervene in the *Spirt* action for any other purpose than to oppose the TIAA–CREF motion for partial relief from the *Spirt* judgment, it would be precluded from doing so by virtue of the fact that the EEOC's application to intervene was not timely filed insofar as it seeks an order granting the EEOC leave to intervene in the *Spirt* action for such other purposes. The EEOC moved to intervene approximately seven years after the *Spirt* action was commenced and approximately two years after a final judgment was entered in the *Spirt* action. With the exception of the issue raised by the TIAA–CREF motion for partial relief from the *Spirt* judgment, the EEOC has known

of the issues raised by the *Spirt* action throughout the pendency of the *Spirt* action. Allowance of the broad intervention sought by the EEOC would delay adjudication of and prejudice the existing parties to the *Spirt* action in the fashion described by the Court in text *supra*. Under these circumstances, the principles recited in text *supra* would require the Court to conclude, were it to reach the question, that the EEOC's application to intervene in the *Spirt* action was not "timely" filed, within the meaning of Rule 24, Fed.R.Civ.P., to the extent the EEOC seeks leave to intervene with respect to issues other than the one raised by the TIAA–CREF motion for partial relief from the *Spirt* judgment.

*aff'd mem.*, 515 F.2d 505 (2d Cir. 1975). Even if this standard is met, the decision whether to order consolidation is still left to the discretion of the trial court. *Jamroz v. Blum*, 509 F.Supp. 953, 956 (N.D.N.Y.1981). In determining whether consolidation is proper, the trial court must weigh the prospective benefits of consolidation, in terms of convenience to the parties and judicial economy, against the extent of any confusion, delay, or prejudice that might result from consolidation. *Tucker v. Arthur Andersen & Co.*, 73 F.R.D. 316, 317 (S.D.N.Y. 1976). The party seeking consolidation has the burden of persuading the trial court that the balance of these considerations tips in favor of consolidation. *Transeastern Shipping Corp. v. India Supply Mission*, 53 F.R.D. 204, 206 (S.D.N.Y.1971).

■ In light of the foregoing principles, the Court finds that it may not properly order the consolidation that the EEOC seeks here. As noted, the *Spirt* action is before this Court on a limited remand from the Court of Appeals for this Circuit. Since this Court does not have jurisdiction over the *Spirt* action for all purposes, this Court may not permissibly order consolidation of the *Lewis* action and the *Spirt* action for all purposes. Even if the Court *could* issue such an order, the EEOC has failed to persuade the Court that an order consolidating the *Spirt* action and the *Lewis* action for all purposes would be a sound exercise of its discretion. The two actions may indeed present a common issue of law: whether Superintendent Lewis violated Title VII by refusing to approve Unisex II. However, as the Court holds in part II of today's opinion, this issue is not justiciable in the context of the *Spirt* action. There consequently can be no doubt that an order consolidating these two actions for all purposes would, by making the issue of Superintendent Lewis' liability under Title VII justiciable in the *Spirt* action, threaten to delay final adjudication of the *Spirt* action, to

prejudice the original parties to the *Spirt* action, and to create confusion in the subsequent litigation of both the *Spirt* action and the *Lewis* action. Further, since the Court's holding that the issue of Superintendent Lewis' liability under Title VII is not justiciable in the *Spirt* action does not prejudice the EEOC's ability to litigate this issue in the *Lewis* action, the EEOC is not prejudiced by being denied an opportunity to litigate this issue in the *Spirt* action. Accordingly, the Court denies the EEOC's motions, filed in both the *Spirt* action and the *Lewis* action, for an order consolidating these two actions pursuant to Rule 42(a), Fed.R.Civ.P.

### C. The Moshowitz-Alexion-Clynes, AAUP, and ANA Motions to Intervene in the Lewis Action

Moshowitz, Alexion, Clynes, the AAUP, and the ANA have all moved, pursuant to Rules 24(a)(1), 24(a)(2), and 24(b)(2), Fed.R. Civ.P., for leave to intervene as plaintiffs in the *Lewis* action. The applicants for intervention in the *Lewis* action were all actuated to file their motions by a desire to challenge, in identical fashion to the EEOC's complaint in the *Lewis* action, the conduct of Superintendent Lewis in refusing to approve Unisex II. The EEOC, plaintiff in the *Lewis* action, has joined in the Moshowitz-Alexion-Clynes motion insofar as it relies on Rule 24(a)(1). In the paragraphs that follow, the Court deals in turn with each of the three bases for intervention relied upon by the movants.

*1. Rule 24(a)(1).* Rule 24(a)(1), Fed.R. Civ.P., provides that "[u]pon timely application anyone shall be permitted to intervene in an action ... when a statute of the United States confers an unconditional right to intervene." Since the Court finds that each of the three motions to intervene in the *Lewis* action was filed in a timely fashion,[3] it must grant these motions to the

---

**3.** TIAA and CREF base their contention that these motions were not timely filed on their hypothesis that the *Lewis* action and the *Spirt* action would be consolidated, meaning that the motions to intervene in the *Lewis* action really

ought to be treated as if they were motions to intervene in the *Spirt* action. Since the Court, by today's opinion, denies the EEOC's motions to consolidate the *Spirt* action and the *Lewis* action, the TIAA–CREF theory of untimeliness

extent that a statute of the United States confers an unconditional right to intervene upon the movants. Title VII does confer upon certain persons an unconditional right to intervene in an enforcement action brought by the EEOC. The relevant statutory language states that "[t]he person or persons aggrieved [by an alleged violation of Title VII] shall have the right to intervene in a civil action brought by the [EEOC, on account of the alleged violation, pursuant to 42 U.S.C. § 2000e–5(f)(1)]." 42 U.S.C. § 2000e–5(f)(1).

■ The right of the movants to intervene in the *Lewis* action under Rule 24(a)(1) thus depends on whether they are "persons aggrieved" as that term is used in the above-quoted statutory language. All the parties agree that, in order to qualify as a "person aggrieved" within the meaning of the intervention provision contained in 42 U.S.C. § 2000e–5(f)(1), one must at least have an interest in the litigation sufficient to establish standing under article III of the United States Constitution. *See EEOC v. American Telegraph & Telephone Co.*, 506 F.2d 735, 740 (3d Cir. 1974); *cf. Senter v. General Motors Corp.*, 532 F.2d 511, 516–17 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Hackett v. McGuire Brothers, Inc.*, 445 F.2d 442, 446 (3d Cir. 1971) (both applying article III standing analysis to determine whether plaintiff was a "person aggrieved" entitled to commence a private Title VII action under 42 U.S.C. § 2000e–5(f)(1)). However, TIAA and CREF assert that, in addition to this requirement, intervention in an EEOC-filed civil action pursuant to 42 U.S.C. § 2000e–5(f)(1) is limited to the person or persons who actually filed the charge that prompted the EEOC to commence the action.

The Court has found no case that rules on whether the intervention provision contained in 42 U.S.C. § 2000e–5(f)(1) is properly interpreted as imposing the additional

requirement urged by TIAA and CREF. It observes, however, that the interpretation advanced by TIAA and CREF is strongly supported by the structure of 42 U.S.C. § 2000e–5(f)(1) as a whole. Elsewhere in that section, the EEOC is required, in the event it dismisses a charge, or in the event a charge does not lead to the EEOC's commencement of a civil action within 180 days after its filing, to notify "the person aggrieved" of this fact. Upon receipt of such a notice, commonly known as "right-to-sue" letter, "the person claiming to be aggrieved" may bring a civil action against the respondent named in the charge. It seems plain from the face of the statute that the person whom the Commission is required to notify, and who thereby gains the right to sue, is the person who filed the charge—not every person who might have had constitutional standing to file a similar charge or to commence a similar civil action. If, as the wording of the statute indicates, the term "person aggrieved," when used in the context of an EEOC decision to dismiss or to decline to act on a charge, means the person who filed the charge, logic dictates that Congress must have intended to give "person aggrieved" the same meaning when it used this term in the context of an EEOC decision to commence a civil action on the basis of a charge. In other words, if Congress intended for the person who filed the charge ("the person aggrieved") to be the only person statutorily entitled to notice and consequently to file suit in the event the EEOC dismissed or declined to act on the charge, Congress must also have intended for the person who filed the charge ("the person aggrieved") to be the only person statutorily entitled to intervene in the event the EEOC determined to commence a civil action based on the charge.

■ The Court's view that the statutory language strongly indicates that Congress, in drafting the intervention provision contained in 42 U.S.C. § 2000e–5(f)(1), must

clearly fails. There can be no doubt, given that the motions to intervene in the *Lewis* action were filed promptly after the filing of the complaint in that action, and that there has been

virtually no litigation on the merits in the *Lewis* action, that these motions were timely filed insofar as the *Lewis* action is concerned.

have used the term "person aggrieved" to refer to a person who filed a charge with the EEOC is fully supported by the legislative history of that section. The wording of 42 U.S.C. § 2000e–5(f)(1) was agreed upon at a House-Senate conference on the bills that ultimately were enacted as the Equal Employment Opportunity Act of 1972, Pub. L.No. 92–261, 86 Stat. 103 (1972). The conference report explained the section as follows:

> The conferees adopted a provision allowing the Commission, or the Attorney General in a case against a state or local government agency, to bring an action in Federal district courts if the Commission is unable to secure from the respondent "a conciliation agreement acceptable to the Commission." Aggrieved parties are permitted to intervene. They may bring a private action if the Commission or Attorney General has not brought suit within 180 days or the Commission has entered into a conciliation agreement to which such aggrieved party is not a signatory. The Commission, or the Attorney General in a case involving state and local governments, may intervene in such private action.

H.R.Conf.Rep. No. 899, 92d Cong., 2d Sess. 17–18 (1972), *reprinted in* [1972] U.S.Code Cong. & Ad.News 2137, 2182. From this explanation, the Court concludes that the conferees had two principles firmly in mind when they wrote 42 U.S.C. § 2000e–5(f)(1): (1) in order to commence a private Title VII civil action as a "person aggrieved," the prospective plaintiff must, *inter alia*, first have filed a charge with the EEOC; and (2) the term "person aggrieved" has an identical meaning in reference to both the persons entitled to commence a private civil action under Title VII and the persons entitled to intervene in an EEOC-filed civil action under Title VII. A third principle inevitably flows from these two: in order to intervene in an EEOC-filed Title VII civil action as a "person aggrieved," the prospective intervenor must, *inter alia*, have

filed the charge with the EEOC that prompted the action.

On the basis of a consideration of just the language and legislative history of the statute, then, the Court would be inclined to hold that the right of intervention provided in 42 U.S.C. § 2000e–5(f)(1) may only be invoked by a person (1) who has an interest in the action sufficient to establish standing under article III of the United States Constitution, and (2) who filed the charge that prompted the EEOC to commence the action in which intervention is sought. However, the Court notes that, under existing case law, a private person having article III standing will be permitted to *commence* a private Title VII action as a "person aggrieved" within the meaning of 42 U.S.C. § 2000e–5(f)(1) if (1) the plaintiff previously filed a charge with the EEOC, *or* (2) some other private person previously filed an EEOC charge "so similar [to the claim stated in the plaintiff's complaint] that no conciliatory purpose would [have been] served" if the plaintiff had also filed a charge with the EEOC. *Foster v. Gueory,* 655 F.2d 1319, 1322 (D.C.Cir.1981). That is, if the plaintiff has article III standing, but has not previously filed an EEOC charge, he or she will still be a proper Title VII plaintiff as long as *someone else* has previously filed an EEOC charge "nearly identical" to the claim set forth in the plaintiff's complaint. *Id.* at 1323; *accord, Crawford v. United States Steel Corp.,* 660 F.2d 663, 666 (5th Cir. 1981).

In the Court's view, it would be nonsensical for the courts to give the term "person aggrieved," as used in 42 U.S.C. § 2000e–5(f)(1), one meaning for the purpose of determining a person's right to commence a private Title VII action and a second, different meaning in order to determine a person's right to intervene in an EEOC-filed Title VII action. Accordingly, the Court, while attentive to the language and legislative history of the intervention provision contained in 42 U.S.C. § 2000e–5(f)(1),[4]

---

4. The parties have not referred the Court to any administrative interpretation of the inter-

vention provision contained in 42 U.S.C. § 2000e–5(f)(1). The EEOC, in its memoran-

holds on the basis of the judicial precedent just discussed that the right of intervention provided in 42 U.S.C. § 2000e–5(f)(1) may only be invoked if (1) the proposed intervenor has an interest in the action sufficient to establish standing under article III of the United States Constitution, and (2) the action was commenced by the EEOC in response to a charge filed either (a) by the proposed intervenor or (b) by another private party having a nearly identical claim to the claim raised by the proposed intervenor.

 None of the proposed intervenors in the *Lewis* action has satisfied the second prong of this test. The AAUP has never

filed a charge with the EEOC relative to any of the named defendants in the *Lewis* action. While Moshowitz, Alexion, Clynes, and the ANA have filed such charges relative to TIAA and CREF, these charges in no way challenged any conduct performed by Superintendent Lewis and did not prompt the EEOC's commencement of the *Lewis* action.[5] There has been no suggestion that the *Lewis* action was commenced in response to a privately filed charge against Superintendent Lewis "nearly identical" to the claims raised against Superintendent Lewis here by the proposed intervenors.[6] Thus, none of the proposed intervenors in the *Lewis* action has an uncondition-

dum in support of the Moshowitz-Alexion-Clynes intervention motion, does not argue that the statute gives Moshowitz, Alexion, and Clynes an unconditional right to intervene; the EEOC states merely that the *policy* of the statute would be served by permitting these three persons to intervene. Unfortunately for the proposed intervenors, Rule 24(a)(1) is limited to situations where "a statute of the United States confers an unconditional right to intervene," and cannot be read to apply in cases where "a statute of the United States is based on a policy that supports allowance of the proposed intervention." Even if the EEOC had taken the express position, either in its regulations or in a brief filed with the Court, that 42 U.S.C. § 2000e–5(f)(1) should be interpreted to confer on some or all of the proposed intervenors an unconditional right to intervene in the *Lewis* action, the Court is extremely doubtful that it would be disposed to endorse such an interpretation in the face of the contradictory language and legislative history of the statute.

**5.** The Court rejects the argument that Moshowitz, Alexion, Clynes, and the ANA, simply because they once filed charges with the EEOC against TIAA and CREF, therefore must be permitted to intervene in the *Lewis* action in spite of the fact that their charges in no way involved Superintendent Lewis and had nothing to do with the commencement of the *Lewis* action. It must be remembered that the *Lewis* action only challenges conduct performed by *Superintendent Lewis*, and that TIAA and CREF are named as defendants only on the theory that their joinder is required by Rule 19. The Court refuses to believe that Congress, when it enacted the intervention provision contained in 42 U.S.C. § 2000e–5(f)(1), intended for *anyone* who files a charge with the EEOC against a particular person thereby to gain an *unconditional* right to intervene in *any* EEOC action naming the charged person as a defendant, no matter where, when, or under what

circumstances the action in which intervention is sought happened to be commenced. Under this interpretation of 42 U.S.C. § 2000e–5(f)(1), any of the charging parties in any of the numerous Title VII actions against TIAA and CREF currently pending around the country would have an *absolute right* to intervene in the *Lewis* action. The Court does not believe that Congress could have intended this result, particularly when it observes (1) that Moshowitz, Alexion, and Clynes did not choose to intervene in *EEOC v. Columbia University*, No. 78 Civ. 4420(TPG) (S.D.N.Y.), an action commenced by the EEOC against TIAA and CREF on the basis of a charge filed with the EEOC by Moshowitz, Alexion, and Clynes, and (2) that the ANA is the plaintiff in *ANA v. TIAA*, No. C–75–558–G (M.D.N.C.), an action commenced by the ANA against TIAA and CREF on the basis of a charge filed with the EEOC by the ANA.

**6.** Indeed, there has been no suggestion that the *Lewis* action was commenced in response to *any* privately filed charge. The Court assumes, for the purposes of today's opinion, that the EEOC commenced the *Lewis* action under the authority of 42 U.S.C. § 2000e–5(f)(1). If the *Lewis* action was not commenced under 42 U.S.C. § 2000e–5(f)(1), there is plainly no argument that any private party may intervene as of right in the *Lewis* action pursuant to Rule 24(a)(1). *EEOC v. United Air Lines, Inc.*, 515 F.2d 946, 949 (7th Cir. 1975). Of course, 42 U.S.C. § 2000e–5(f)(1) would only provide a jurisdictional basis for the *Lewis* action if (1) the *Lewis* action was commenced in response to a charge filed by a person aggrieved or by a member of the EEOC, and (2) Superintendent Lewis is an "employer" within the meaning of Title VII. *See* 42 U.S.C. § 2000e–5(b). The Court does not decide either of these questions by today's opinion.

al right to intervene in the *Lewis* action by virtue of 42 U.S.C. § 2000e–5(f)(1). The Court accordingly denies their motions to intervene in the *Lewis* action insofar as they rely on Rule 24(a)(1).

▅ *2. Rule 24(a)(2).* Rule 24(a)(2), Fed.R.Civ.P., provides that "[u]pon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Thus, Rule 24(a)(2) sets forth a four-part test for intervention as of right. Under this test, an applicant for intervention must be permitted to intervene in an action if (1) the application was made in timely fashion, (2) the applicant claims an interest relating to the property or transaction that is the subject of the action, (3) the applicant is so situated that disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest, and (4) the applicant's interest is not adequately represented by existing parties. *Foster v. Gueory, supra,* 655 F.2d at 1324–25; *United States Postal Service v. Brennan,* 579 F.2d 188, 191 (2d Cir. 1978); *Weisman v. Darneille,* 89 F.R.D. 47, 50 (S.D.N.Y.1980).

There can be little doubt that the first three prongs of this test are satisfied with respect to each of the applicants to intervene in the *Lewis* action. First, their applications for intervention were, for the reasons set forth in note 3 *supra,* made in a timely fashion. Second, since the alleged conduct challenged by the EEOC's complaint in the *Lewis* action directly threatens significantly to affect the amount of retirement benefits that Moshowitz, Alexion, Clynes, and members of the AAUP and the ANA will be contractually entitled to receive on account of their future contributions to the TIAA and CREF plans, the movants claim a sufficient Rule 24(a)(2) interest relating to the transactions that

are the subject of the *Lewis* action. *See New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York,* 516 F.2d 350, 352 (2d Cir. 1975) (per curiam) (association has requisite interest for purposes of Rule 24(a)(2) if some of its members have the requisite Rule 24(a)(2) interest and association exists to protect that interest); *In re Penn Central Commercial Paper Litigation, supra,* 62 F.R.D. at 346 (interest that is significant, directly affected by challenged conduct, and legally protectable is sufficient to satisfy this portion of Rule 24(a)(2)). Third, since the Court's adjudication of the *Lewis* action could have a *stare decisis* effect that would negatively impact on the movants' hopes for success in other litigations involving TIAA and CREF, there can be no doubt that the movants are so situated that the Court's disposition of the *Lewis* action may impair or impede their ability to protect the interest described above. *Foster v. Gueory, supra,* 655 F.2d at 1325; *New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York, supra,* 516 F.2d at 352 (both holding that possible *stare decisis* effect of court's decision creates sufficient threat of "impairment" of applicant's interest to satisfy this portion of Rule 24(a)(2)).

▅ The difficult question with respect to Rule 24(a)(2) is whether the fourth prong of the test set forth above has been satisfied. The determination whether the applicant's interest is adequately represented by existing parties is a decision within the sound discretion of the trial court. *Rios v. Enterprise Association Steamfitters Local 638,* 520 F.2d 352, 355 (2d Cir. 1975). Generally, this prong of the Rule 24(a)(2) test imposes only a "minimal" burden on the applicant for intervention, *see Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 636 n.10, 30 L.Ed.2d 686 (1972), under which the movant is merely required to show that the representation afforded its interest by existing parties "may be" inadequate. *United States Postal Service v. Brennan, supra,* 579 F.2d at 191. However, where one of the parties to the

action in which intervention is sought is charged by law with representing the interest of the applicant for intervention, the movant faces a more stringent burden; in such a case, a very strong showing of inadequate representation must be made. 7A C. Wright & A. Miller, *Federal Practice & Procedure* § 1909, at 525–31 (1972).

TIAA and CREF urge that, since the EEOC is the plaintiff in the *Lewis* action, the applicants for intervention in the *Lewis* action are subject to the more stringent burden described above. However, the movants point out that the EEOC is charged by law with representing the *public* interest in the *Lewis* action, and not necessarily the interests of the movants. On this basis, the movants argue that they should be required only to make the above-described "minimal" showing of inadequacy of representation in order to satisfy their burden on this point. The Court agrees with the movants. "[U]nder the procedural structure created by the [Equal Employment Opportunity Act of 1972, *supra*], the EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties...." *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 368, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). Rather, "[w]hen the EEOC acts, ... it acts also to vindicate the public interest in preventing employment discrimination." *General Telephone Co. v. EEOC*, 446 U.S. 318, 326, 100 S.Ct. 1698, 1704, 64 L.Ed.2d 319 (1980). "In achieving the broad social and economic objectives of [Title VII], the [EEOC] may be more concerned with future compliance with [Title VII] by employers than with redressing employee grievances that have accrued already." *McClain v. Wagner Electric Corp.*, 550 F.2d 1115, 1121–22 (8th Cir. 1977). Thus, when it files an enforcement action, "the EEOC is not merely a proxy for the victims of discrimination." *General Telephone Co. v. EEOC, supra*, 446 U.S. at 326, 100 S.Ct. at 1704. The EEOC cannot, therefore, be regarded as charged by law with representing the interests of the applicants for intervention in the *Lewis* action; accordingly, these applicants need only make the customarily required "minimal" showing of inadequate representation.

However, the movants have failed to make even this showing. The complaint in the *Lewis* action alleges that Superintendent Lewis has applied the New York Insurance Law in a manner that the EEOC contends conflicts with the United States Constitution, Title VII, and the Equal Pay Act. The EEOC seeks a declaratory judgment to this effect and an injunction against such unlawful conduct. The proposed intervenors challenge Superintendent Lewis' conduct in precisely the same fashion and seek an identical judgment against Superintendent Lewis. They have not suggested that the EEOC might fail to raise an argument that supports the judgment that they seek. The EEOC and the proposed intervenors agree that the *Lewis* action is ripe for summary judgment, meaning that there is no question of a possible conflict in trial strategy. Thus, the *Lewis* action is not a case where the Court need be concerned that the EEOC's goal is not necessarily coterminous with the goals of individual victims of discrimination. On the contrary, from all appearances the *Lewis* action is a case where the plaintiff has the identical ultimate objective as the applicants for intervention. *See United States Postal Service v. Brennan, supra*, 579 F.2d at 191. The proposed intervenors have not overcome the presumption of adequate representation that arises in such a case. *Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir. 1976). Accordingly, they have not shown that they are entitled to intervene as of right under Rule 24(a)(2).

*3. Rule 24(b)(2).* Under Rule 24(b)(2), Fed.R.Civ.P., "[u]pon timely application anyone may be permitted to intervene in action ... when an applicant's claim or defense and the main action have a question of law or fact in common." Thus, intervention as a plaintiff under Rule 24(b)(2) is permissible only if (1) the application to intervene was made in timely fashion, and (2) the applicant's claim and the plaintiff's claim have a question of law or fact in common. In cases where Rule

24(b)(2) intervention is *permissible*, the decision whether intervention should be *permitted* is wholly discretionary with the trial court. *United States Postal Service v. Brennan, supra*, 579 F.2d at 191. The principal consideration guiding the trial court's discretion is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. *Weisman v. Darneille, supra*, 89 F.R.D. at 52; *United States v. Columbia Pictures Industries, Inc.*, 88 F.R.D. 186, 189 (S.D.N.Y. 1980). Also important is the extent to which the proposed intervenor can be expected, by its participation in the action as a party, to shed light on the facts of the case that will be helpful to the Court in resolving the issues before it. *Barcia v. Sitkin*, 89 F.R.D. 382, 384 (S.D.N.Y.1981).

There is no doubt that the Rule 24(b)(2) intervention sought by the movants is *permissible*. For the reasons set forth in note 3 *supra*, the Court finds that all the applicants for intervention acted in a "timely" fashion. Since all the applicants for intervention challenge the conduct of Superintendent Lewis in virtually identical fashion to the EEOC, their claims and the *Lewis* action have essentially *all* questions of law and fact in common.

However, the Court has not been persuaded that the Rule 24(b)(2) intervention sought by the movants should be *permitted*. As would be expected by virtue of the similarity between the movants' claims and the EEOC's claim, and as is evidenced by the near identity between the Moshowitz-Alexion-Clynes summary judgment motion and the summary judgment motion filed by the EEOC in the *Lewis* action, interjection of any or all of the proposed movants into the *Lewis* action would create an enormous duplication of effort on the plaintiffs' side of the *Lewis* action, while placing an unnecessary burden on Superintendent Lewis and the other defendants in responding to the additional motions, affidavits, and briefs that would inevitably be generated. While the proposed intervenors might possibly shed additional light on certain issues before the Court in the *Lewis* action were

they to be made parties thereto, it is unlikely, given the EEOC's expertise in the area, that the proposed intervenors would be of great assistance to the Court. Further, the Court is disposed to grant all of the proposed intervenors leave to participate in the *Lewis* action as *amici curiae*. *See Blowers v. Lawyers Co-operative Publishing Co., supra*, 527 F.2d at 334. On the basis of all these considerations, the Court declines to exercise its discretion to permit any of the applicants for intervention to intervene in the *Lewis* action pursuant to Rule 24(b)(2).

*4. Conclusion.* None of the applicants for intervention in the *Lewis* action has made the showing required by Rule 24(a)(1), Fed.R.Civ.P., Rule 24(a)(2), Fed.R.Civ.P., or Rule 24(b)(2), Fed.R.Civ.P. The Court therefore denies the motions of Moshowitz, Alexion, Clynes, the AAUP, and the ANA for leave to intervene in the *Lewis* action. However, the movants are granted leave to participate in the *Lewis* action as *amici curiae*. Since Moshowitz, Alexion, and Clynes have been denied leave to intervene in the *Lewis* action, the Moshowitz-Alexion-Clynes motion for summary judgment against Superintendent Lewis in the *Lewis* action is also denied.

### D. The AAUP Motion to Intervene in the Spirt Action

The AAUP has moved, pursuant to Rules 24(a)(2) and 24(b)(2), Fed.R.Civ.P., for leave to intervene as a plaintiff in the *Spirt* action. It is important to note at the outset that the reason for the AAUP's desire to intervene in the *Spirt* action is entirely different from the rationale for the AAUP's motion for leave to intervene in the *Lewis* action. The AAUP sought leave to intervene in the *Lewis* action in order that it could challenge, in identical fashion to the EEOC's complaint in the *Lewis* action, the conduct of Superintendent Lewis in refusing to approve Unisex II. However, the AAUP seeks leave to intervene in the *Spirt* action in order that it can oppose the TIAA–CREF motion for partial relief from the *Spirt* judgment.

The Court has already set forth the four-part test that governs intervention as of right under Rule 24(a)(2). The first three parts of this test have undoubtedly been satisfied here by the AAUP with respect to the issue raised by the TIAA–CREF motion for relief from judgment. First, for the reasons set forth in the Court's discussion of the EEOC's motion for leave to intervene in the *Spirt* action, the AAUP's motion was made in "timely" fashion insofar as the AAUP seeks to oppose the TIAA–CREF motion for relief from judgment. Second, since the TIAA–CREF motion for relief from judgment directly threatens significantly to affect the amount of retirement benefits that members of the AAUP will be contractually entitled to receive on account of their past contributions to the TIAA and CREF plans, the AAUP claims a sufficient Rule 24(a)(2) interest relating to the issue raised by the TIAA–CREF motion for relief from judgment. *See New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York, supra,* 516 F.2d at 352 (association has requisite Rule 24(a)(2) interest if some of its members have the requisite Rule 24(a)(2) interest and the association exists to protect that interest); *In re Penn Central Commercial Paper Litigation, supra,* 62 F.R.D. at 346 (interest that is significant, directly affected by challenged conduct, and legally protectable is sufficient to satisfy this portion of Rule 24(a)(2)). Third, since the Court's determination of the TIAA–CREF motion for relief from judgment could have a *stare decisis* effect that would negatively impact on the AAUP's hopes for success in other litigations on the issue raised by that motion, the AAUP is so situated that the Court's disposition of the TIAA–CREF motion for relief from judgment may impair or impede the

AAUP's ability to protect the interest described above. *Foster v. Gueory, supra,* 655 F.2d at 1325; *New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York, supra,* 516 F.2d at 352.

The Court also finds that the fourth prong of the Rule 24(a)(2) test has been satisfied with respect to the issue raised by the TIAA–CREF motion for relief from judgment. The EEOC has, of course, been granted leave to intervene in the *Spirt* action in order to contest this very issue. In spite of this fact, the AAUP is only required, as the Court explained earlier in its discussion of the motions to intervene in the *Lewis* action, to show that its interest with respect to the issue raised by the TIAA–CREF motion for relief from judgment "may be" inadequately represented by the existing parties to the *Spirt* action. Since, as the Court points out in part III of today's opinion, the AAUP's position on the TIAA–CREF motion for relief from judgment is different from that advanced by any of the parties to the *Spirt* action, including the EEOC, the Court has little difficulty in concluding that the AAUP has shown the requisite possibility of inadequate representation by the existing parties on the issue raised by that motion. *See Adams v. Mathews,* 536 F.2d 417, 418 (D.C.Cir.1976) (per curiam) (representation inadequate for purposes of Rule 24(a)(2) where none of the existing parties to the litigation support proposed intervenor's view of the applicable law). Accordingly, pursuant to Rule 24(a)(2), Fed.R.Civ.P., the AAUP is granted leave to intervene in the *Spirt* action with respect to the issue raised by the TIAA–CREF motion for relief from judgment.[7]

Notwithstanding its statement that it desires to intervene in the *Spirt* action only in

---

7. The Court pauses to add that, if the AAUP were not entitled by Rule 24(a)(2) to intervene as of right with respect to the issue raised by the TIAA–CREF motion for partial relief from the *Spirt* judgment, the Court would grant the AAUP leave to intervene in this fashion pursuant to Rule 24(b)(2). Since the AAUP's application was timely filed, and since the AAUP's intervention would be for the purpose of contesting the precise question of law raised by the TIAA–CREF motion, intervention under Rule

24(b)(2) would, under the principles stated in connection with the Court's discussion of the motions to intervene in the *Lewis* action, unquestionably be *permissible.* Since, as the Court explained earlier in its discussion of the EEOC's motion for leave to intervene in the *Spirt* action, no undue delay or prejudice would flow from allowing the AAUP to intervene on this one issue, the Court would be acting in the proper exercise of its discretion were it to hold that such an intervention should be *permitted.*

order to oppose the TIAA–CREF motion for relief from judgment, the AAUP's motion for leave to intervene in the *Spirt* action seeks an order whereby the AAUP would become a plaintiff in the *Spirt* action for all purposes. The AAUP is not entitled by Rule 24(a)(2) to intervene in this broad fashion. First, since the AAUP moved to intervene approximately seven years after the *Spirt* action was commenced and approximately two years after a final judgment was entered in the *Spirt* action, and since allowance of the broad intervention sought by the AAUP would delay adjudication of and prejudice the existing parties to the *Spirt* action in the fashion described by the Court in its discussion of the EEOC's motion to intervene in the *Spirt* action, the Court finds that the AAUP's application to intervene was not timely filed insofar as it seeks an order granting the AAUP leave to intervene in the *Spirt* action for all purposes. *See Crown Financial Corp. v. Winthrop Lawrence Corp., supra,* 531 F.2d at 77 ("[i]ntervention after judgment is unusual and not often granted"); *Carey v. Klutznick, supra,* 88 F.R.D. at 250 (factors relevant to timeliness under Rule 24 include extent to which the suit has progressed and the length of time applicant for intervention knew of its interest in the suit before moving for leave to intervene); *United States v. International Business Machines Corp., supra,* 62 F.R.D. at 541–42 (most important factor to timeliness question under Rule 24 is whether delay in moving for intervention has prejudiced any of the existing parties). Second, with the exception of the interest implicated by the TIAA–CREF motion for relief from judgment, the AAUP has made no showing that it has an interest in any issue presently justiciable in the *Spirt* action that may be inadequately represented by the existing parties to the *Spirt* action.

Nor does Rule 24(b)(2) provide a basis for the Court to grant the AAUP leave to intervene in the *Spirt* action for all purposes. The Court has already set forth the standard for Rule 24(b)(2) intervention in its discussion of the motions to intervene in the *Lewis* action. Since, for the reasons just stated, the AAUP's application to intervene was not timely filed insofar as it seeks leave to intervene for all purposes, the Rule 24(b)(2) intervention sought by the AAUP is not *permissible.* Even if such intervention were permissible, the delay and prejudice that would, as the Court explained in its discussion of the EEOC's motion to intervene in the *Spirt* action, likely flow from an order allowing such intervention would prevent the Court from exercising its discretion to *permit* the AAUP to intervene for all purposes.

Accordingly, the AAUP's motion, pursuant to Rules 24(a)(2) and 24(b)(2), Fed.R. Civ.P., for leave to intervene in the *Spirt* action is granted in part and denied in part. The AAUP is granted leave to intervene as a plaintiff in the *Spirt* action only for the purpose of contesting the TIAA–CREF motion for partial relief from the *Spirt* judgment. With respect to the other issues pending before the Court in the *Spirt* action, the AAUP shall have leave to participate in the *Spirt* action as an *amicus curiae. See Blowers v. Lawyers Co-operative Publishing Co., supra,* 527 F.2d at 334.

## II. Motions Relating to Spirt's Supplemental Complaint

Having emerged from its journey through the entire labyrinth of Rule 24 of

---

The Court also adds that, while the AAUP has never filed an EEOC charge against any of the named defendants in the *Spirt* action, this fact imposes no barrier to the intervention granted by the Court. The AAUP's proposed intervention in the *Spirt* action presents a case where "the [proposed intervenor] has asserted claims of [sex] discrimination so similar to those asserted by the original plaintiff[ ] that no purpose would be served by requiring [the proposed intervenor] to file independent [sex] discrimination charges with the EEOC." In such

a case, the application to intervene should be judged by the criteria set forth in Rule 24, without imposing an additional exhaustion-of-administrative-remedies requirement. *Foster v. Gueory, supra,* 655 F.2d at 1323; *cf. Hodge v. McLean Trucking Co.,* 607 F.2d 1118, 1121 (5th Cir. 1979) (per curiam) (denying leave to intervene because proposed intervenors had not filed EEOC charges; however, *see Crawford v. United States Steel Corp., supra,* 660 F.2d at 665 n.7, original plaintiff had not filed EEOC charge either).

the Federal Rules of Civil Procedure, the Court turns to the second of the three major topics that it deals with in today's opinion, namely, the motions filed in the *Spirt* action relating to Spirt's supplemental complaint. Spirt has filed a motion, pursuant to Rule 56, Fed.R.Civ.P., for summary judgment against Superintendent Lewis. TIAA and CREF, joined by Superintendent Lewis, have opposed this motion and have cross-moved, pursuant to Rule 12(b)(6), Fed.R. Civ.P., for an order dismissing Spirt's supplemental complaint.

The Court must first deal with a somewhat unusual jurisdictional problem posed by Spirt's motion. By her motion, Spirt seeks (1) a declaratory judgment that Superintendent Lewis, in refusing to approve Unisex II, violated certain provisions of the federal constitution and of federal statutes; and (2) an order, on the basis of Superintendent Lewis' refusal to approve Unisex II, amending the *Spirt* judgment insofar as the Court thereby found that Spirt had failed to state a claim against TIAA and CREF under 42 U.S.C. § 1983 ("Section 1983"). The second aspect of the relief sought by Spirt is, in the Court's view, clearly not attainable via a Rule 56 motion against Superintendent Lewis. It might be argued that such an amendment of the *Spirt* judgment can be attained, on the theory that "it is no longer equitable that [this aspect of] the [*Spirt*] judgment should have prospective application," via a motion pursuant to Rule 60(b)(5), Fed.R.Civ.P. However, the quoted portion of Rule 60(b)(5) only supports a motion for relief from judgment if the movant contends that a *prospective* judgment of a court has been rendered inequitable by events *subsequent* to the court's entry of that judgment. 7 *Moore's Federal Practice* ¶ 60.26[4], at 334–39 (2d ed. 1979). Here, while Spirt's effort to persuade the Court to reconsider its prior ruling on Spirt's Section 1983 claims is based on an event subsequent to the *Spirt* judgment (namely, Superintendent Lewis' refusal to approve Unisex II), the Court did not make any prospective rulings with respect to Spirt's Section 1983 claims in the *Spirt* judgment. In the normal course, then, the proper means for Spirt to present her new Section 1983 theory would have been to commence an entirely new action against TIAA and CREF. However, the literal terms of the order of remand issued in the *Spirt* action by the Court of Appeals direct this Court to consider Spirt's new Section 1983 claim.[8] The Court accordingly deems Spirt's motion to rely on both Rule 56, Fed.R.Civ.P., and Rule 60(b)(5), Fed.R. Civ.P., and finds that the mandate issued in the *Spirt* action by the Court of Appeals provides any necessary jurisdictional basis for this Court to hear the Rule 60(b)(5) aspect of Spirt's motion.

The Court deals first with the Rule 56 aspect of Spirt's motion. Spirt, in her supplemental complaint, contends that Superintendent Lewis' refusal to approve Unisex II constituted a violation of (1) the equal protection clause of the fourteenth amendment to the United States Constitution, (2) Title VII, and (3) the Equal Pay Act. By

8. In its order of remand, the Court of Appeals directed, in relevant part, "[t]hat the [*Spirt*] action be remanded to the District Court for the purpose of permitting an application for joinder of the Superintendent of Insurance of the State of New York to the action so as to permit consideration by the District Court of the issues relating to the Superintendent's action [in refusing to approve Unisex II]." As is explained in greater detail in text *infra*, Spirt's new claim that TIAA and CREF are liable under Section 1983 is "related" to Superintendent Lewis' refusal to approve Unisex II. Read literally, then, the mandate of the Court of Appeals clearly directs the Court to consider Spirt's new Section 1983 claim. (The Court also observes that the Court of Appeals based its order of remand on its view that Superintendent Lewis' refusal to approve Unisex II was "relevant to the issues involved [in the *Spirt* action] on appeal." Spirt's Section 1983 claim was, in the Court's view, the only issue before the Court of Appeals in the *Spirt* action that was even arguably implicated by Superintendent Lewis' disapproval of Unisex II.) The Court thus rejects the TIAA–CREF argument that the issue raised by Spirt's new Section 1983 claim is not an issue that the Court of Appeals remanded for this Court's consideration. TIAA and CREF have had ample opportunity, in the event they took this argument seriously, to petition the Court of Appeals for clarification of its mandate.

the Rule 56 aspect of her motion, Spirt seeks a declaratory judgment to this effect and an injunction against future refusals of a similar kind. This aspect of the relief sought by Spirt's motion is virtually identical to the relief sought by the EEOC in the *Lewis* action. For the reasons that follow, the Court holds that the issue whether Superintendent Lewis violated Title VII by his disapproval of Unisex II is not justiciable in the context of the *Spirt* action.

Both Unisex II and Unisex III deal with the problem of calculating the benefits to be received by plan participants from their future contributions to the TIAA and CREF plans. All parties and *amici* in both the *Spirt* action and the *Lewis* action agree that the Unisex II method of calculating such benefits fully complies with Title VII. Superintendent Lewis refused to approve Unisex II on the ground that it did not comply with the New York Insurance Law. Plainly, if Unisex III, which Superintendent Lewis did approve, complies with Title VII, then Superintendent Lewis has done nothing more than disapprove one Title VII-sufficient plan (Unisex II) and later approve a second Title VII-sufficient plan (Unisex III). In this event, there is no claim against Superintendent Lewis for the simple reason that, unless no other method is available, Title VII does not afford any victim of unlawful discrimination a right to a particular method of ending that discrimination. Thus, the claims against Superintendent Lewis in the *Lewis* action and the *Spirt* action hinge on the theory that Unisex III, unlike Unisex II, does not pass muster under Title VII, meaning that Superintendent Lewis, by his disapproval of Unisex II, has impeded compliance with Title VII by TIAA and CREF.

Therefore, the viability of any claim based on Superintendent Lewis' disapproval of Unisex II depends on whether Unisex III complies with Title VII. The question of the sufficiency of Unisex III under Title VII is the issue now being litigated in the *Lewis* action. *It is not, however, being litigated in the* Spirt *action.* Counsel for Spirt has stated that he sees no objection under Title VII to the use of Unisex III by TIAA and CREF to calculate the benefits to be received by plan participants from their future contributions to the TIAA and CREF plans. There is no article III case or controversy over an issue when the parties desire precisely the same result with respect to the issue. *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 383, 100 S.Ct. 1194, 1199, 63 L.Ed.2d 467 (1980); *Moore v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 47, 48, 91 S.Ct. 1292, 1293, 28 L.Ed.2d 590 (1971) (per curiam); L. Tribe, *American Constitutional Law* § 3–15, at 69 (1978). Since Spirt agrees with the TIAA–CREF–Superintendent Lewis position on the sufficiency of Unisex III under Title VII, the Court is without power to adjudicate the Title VII-sufficiency of Unisex III in the context of the *Spirt* action. Since the lawfulness of Superintendent Lewis' refusal to approve Unisex II hinges on whether Unisex III passes muster under Title VII, the fact that the Title VII-sufficiency of Unisex III is not justiciable in the *Spirt* action means that the Court cannot, in the *Spirt* action, adjudicate the lawfulness of Superintendent Lewis' disapproval of Unisex II. Spirt's complaint must therefore be dismissed, insofar as it seeks declaratory or injunctive relief against Superintendent Lewis, on grounds of nonjusticiability.[9] This dismissal is, of course, without

---

**9.** The Court pauses to observe that, in holding that the issue of the lawfulness of Superintendent Lewis' disapproval of Unisex II is nonjusticiable, the Court has adopted the course apparently preferred by Spirt herself. In his final memorandum to the Court on the legal issues raised by Spirt's supplemental complaint, Spirt's counsel expressed the desire not to litigate any of the issues surrounding the Title VII-sufficiency of Unisex III or the lawfulness of Superintendent Lewis' disapproval of Unisex

II, but rather to confine his effort to persuading the Court that Superintendent Lewis' disapproval of Unisex II was sufficient to convert the conduct of TIAA and CREF into state action for the purposes of Section 1983. *See* Plaintiff's Response Under the August 6, 1981 "Final" Filing Date, August 3, 1981, at 5–11. Thus, at least at the present time, Spirt apparently regards her supplemental complaint as directed against TIAA and CREF, not Superintendent Lewis.

prejudice, on grounds of *res judicata*, collateral estoppel, "law of the case," or *stare decisis*, or under any other theory that counsel might one day proffer, to the similar claim presented against Superintendent Lewis by the EEOC in the *Lewis* action.

As noted, the Court has determined to interpret Spirt's Rule 56 motion to seek not only summary judgment against Superintendent Lewis but also a Rule 60(b)(5) amendment of the *Spirt* judgment. The Court now turns to the Rule 60(b)(5) aspect of Spirt's motion. In her supplemental complaint, Spirt alleges that Superintendent Lewis refused to approve Unisex II on account of its "unisex" feature, which feature Superintendent Lewis viewed to be in violation of the New York Insurance Law. Spirt has further alleged, in additional submissions to the Court, that Superintendent Lewis' understanding of the New York Insurance Law is such that he will disapprove any plan that adopts a "unisex" approach to calculating the benefits to be received by participants in the TIAA and CREF plans on account of their *past* contributions to those plans. In Spirt's view, the alleged conduct of Superintendent Lewis, by "compelling" the TIAA–CREF conduct of which Spirt complains, *see* Supplemental Complaint ¶ 11, converted the erstwhile "private action" of TIAA and CREF into "state action." On this basis Spirt argues that the *Spirt* judgment must be amended insofar as the Court thereby ruled that Spirt had failed to state a Section 1983 claim against TIAA and CREF because she had failed to allege "state action."

The Court believes that analysis of the Rule 60(b)(5) aspect of Spirt's motion is best begun by reviewing the Court's conclusion

in *Spirt II* that Spirt had failed to state a Section 1983 claim against TIAA and CREF. Basically, the Court held that TIAA and CREF, being private entities, had not acted in a fashion such that their conduct could be deemed "state action," and thus that Spirt had failed to allege one of the necessary components of an equal protection claim under Section 1983. The Court recognized that action of a regulated entity such as TIAA or CREF may fairly be treated as action of the regulating state in a case where " 'there is a sufficiently close nexus between the [s]tate and the challenged action of the regulated entity.' " *Spirt II, supra*, 475 F.Supp. at 1311 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)). However, the Court failed to find the requisite nexus between the State of New York and the challenged action of TIAA and CREF, because it found nothing in the record to support a conclusion that the State of New York had compelled, or even fostered or encouraged, the alleged discrimination. *Spirt II, supra*, 475 F.Supp. at 1312–13 (citing *Moose Lodge 107 v. Irvis*, 407 U.S. 163, 175–77 & n.3, 92 S.Ct. 1965, 1972–73 & n.3, 32 L.Ed.2d 627 (1972)).[10]

Analysis of the Rule 60(b)(5) aspect of Spirt's motion also requires a clear understanding of the TIAA–CREF conduct that Spirt alleges was in violation of the Constitution. When she originally filed her complaint in the *Spirt* action, Spirt challenged, on both federal constitutional and federal statutory grounds, that aspect of the then-operative TIAA and CREF retirement plans pursuant to which TIAA and CREF used sex-segregated mortality tables in cal-

---

**10.** The Court recognized, in *Spirt II*, that the state action question is probably governed by the former test, meaning that Spirt is probably required to show not merely that the State of New York "fostered or encouraged" the allegedly unlawful conduct, but instead that the State of New York "compelled" that conduct. 475 F.Supp. at 1312 (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 165, 98 S.Ct. 1729, 1738, 56 L.Ed.2d 185 (1978)). Since the Court found that Spirt had not satisfied the less onerous fostered-or-encouraged standard, it was not required to determine which test actually gov-

erned the question. *Spirt II, supra*, 475 F.Supp. at 1312–13 nn.21–22. The court reads the most recent decision on this issue by the Court of Appeals for this Circuit to support the view expressed by the Court in *Spirt II*. *See Jensen v. Farrell Lines, Inc.*, 625 F.2d 379, 387 (2d Cir. 1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981). However, since Spirt has still failed to satisfy the fostered-or-encouraged standard, *see* text *infra*, the Court still need not decide whether this is actually the governing standard.

culating any benefits to be received by a participant in the plans. The Court held in *Spirt II*, and reiterates today, that CREF's use of such tables was unlawful under Title VII and that CREF must use sex-merged mortality tables in calculating the benefits to be received by plan participants who retire on or after May 1, 1980 ("deferred annuitants"), with respect to both their *future* contributions (*i.e.*, contributions made by deferred annuitants on or after May 1, 1980) and their *past* contributions (*i.e.*, contributions made by deferred annuitants before May 1, 1980). After entry of the *Spirt* judgment, TIAA and CREF determined, "for reasons of business exigency," to use sex-merged mortality tables with respect to *future* contributions by deferred annuitants, and to this end successively proposed to adopt Unisex I, Unisex II, and Unisex III, all of which were designed to accomplish this goal. However, TIAA and CREF decided not to adopt sex-merged mortality tables with respect to *past* contributions by deferred annuitants. Spirt does not challenge, on either a constitutional or a statutory basis, the conduct of TIAA and CREF in proposing to adopt the sex-merged mortality tables contained in Unisex I, Unisex II, or Unisex III. Thus, her constitutional claim against TIAA and CREF challenges two categories of TIAA–CREF conduct: (1) the original TIAA–CREF decision to use sex-segregated mortality tables in calculating any benefits to be received by a participant in the TIAA and CREF plans, and (2) the subsequent TIAA–CREF decision not to adopt sex-merged mortality tables in calculating the benefits to be received by deferred annuitants on the basis of their *past* contributions to the TIAA and CREF plans. Since the two categories of conduct just listed fully describe the TIAA–CREF conduct that Spirt alleges to have been unconstitutional, Spirt has only stated a Section 1983 claim against TIAA and CREF if some or all of the conduct described in these two categories was "state action." Under the principles set forth in *Spirt II*, there can be no finding that some or all of this conduct was "state action" unless Spirt has alleged facts from which the Court could find that

the State of New York "compelled," or at a minimum "fostered or encouraged," some or all of this conduct. 475 F.Supp. at 1311–13.

In *Spirt II*, the Court rejected the proposition that Spirt had alleged facts from which the Court could find that the State of New York "compelled," or even "encouraged," the original TIAA–CREF decision to use sex-segregated mortality tables in calculating any benefits to be received by any participant in the TIAA and CREF plans. *See* 475 F.Supp. at 1312–13. Given that the events alleged in Spirt's supplemental complaint occurred *after* TIAA and CREF determined not to continue this conduct (but decided instead to use sex-merged mortality tables to calculate the benefits to be received by deferred annuitants on the basis of their future contributions), the events alleged in the supplemental complaint plainly afford the Court no new basis to find that the State of New York "compelled" or even "encouraged" this conduct. As a result, the allegations of Spirt's amended complaint are of assistance to her on the state action issue only if they provide a basis for the Court to find that the State of New York "compelled," or at a minimum "encouraged," the conduct in the second category listed above.

The Court sees no basis for holding, on the basis of the events alleged in the supplemental complaint and in Spirt's other submissions to the Court, that the State of New York "compelled" or even "encouraged" the TIAA–CREF decision not to adopt sex-merged mortality tables to calculate the benefits to be received by deferred annuitants on the basis of their past contributions to the TIAA and CREF plans. Spirt argues that Superintendent Lewis' disapproval of Unisex II somehow "compelled" or "encouraged" TIAA and CREF to continue to use sex-segregated mortality tables with respect to past contributions from deferred annuitants. The Court observes, however, that Unisex II had nothing whatever to do with past contributions from deferred annuitants, but was concerned only with deferred annuitants' *future* contributions. Further, the record

demonstrates that Superintendent Lewis has repeatedly asserted that the New York Insurance Law does not bar "unisex" treatment of future contributions made to the TIAA and CREF plans by deferred annuitants, and that, in accord with this view, Superintendent Lewis has approved Unisex III, a plan that Spirt finds perfectly acceptable for the purpose of calculating the benefits to be received on the basis of future contributions made by deferred annuitants. Given these circumstances, the Court could not possibly interpret Superintendent Lewis' disapproval of Unisex II as having "compelled" or even "encouraged" the TIAA–CREF decision to continue to use sex-segregated mortality tables with respect to past contributions.

■ Spirt alleges that Superintendent Lewis views the New York Insurance Law to forbid the use of sex-merged mortality tables with respect to past contributions from deferred annuitants, but to permit the use of such tables with respect to future contributions from deferred annuitants. This allegation, if proven, would not provide a basis for the Court to hold that the State of New York "compelled" or even "encouraged" the TIAA–CREF decision not to adopt sex-merged mortality tables with respect to past contributions from deferred annuitants. Plainly, the TIAA–CREF decision to continue to use sex-segregated mortality tables with respect to past contribu-

tions from deferred annuitants could only be found to have been "compelled," or even "encouraged," by Superintendent Lewis if there were some basis for finding that TIAA and CREF based their decision not to adopt sex-merged mortality tables with respect to past contributions from deferred annuitants on Superintendent Lewis' alleged interpretation of the New York Insurance Law. While there is some evidence in the record that TIAA and CREF *originally* adopted sex-segregated mortality tables on account of the New York Insurance Law, *see Spirt III, supra*, 475 F.Supp. at 1318; *Spirt II, supra*, 475 F.Supp. at 1312–13, Spirt has not alleged any facts from which the Court could find that TIAA and CREF, in proposing that future contributions from deferred annuitants be governed by sex-merged mortality tables while refusing to adopt sex-merged mortality tables with respect to past contributions from deferred annuitants, relied in doing so on Superintendent Lewis' alleged view that the New York Insurance Law permits a change to sex-merged mortality tables with respect to future contributions from deferred annuitants but forbids such a change with respect to past contributions from deferred annuitants.[11] Having failed to make such allegations, Spirt has alleged merely that Superintendent Lewis agrees with the TIAA–CREF decision to continue to use

11. Indeed, in the Court's view the record is clear that TIAA and CREF did not rely on Superintendent Lewis' interpretation of the New York Insurance Law in determining to distinguish between future contributions and past contributions from deferred annuitants. First, TIAA and CREF adopted this approach well before they became aware of Superintendent Lewis' apparent interpretation of the New York Insurance Law. Second, the Court is convinced, having supervised the *Spirt* action for approximately eight years and having had constant dealings with counsel for TIAA and CREF over the last three years, that TIAA and CREF have refused to use sex-merged mortality tables with respect to past contributions by deferred annuitants because of their deep, unshakable beliefs that such a change would be unfair to male deferred annuitants and that Title VII does not require CREF to make such a change. TIAA and CREF made this argument to the Court in their original motions for sum-

mary judgment; CREF reiterated this argument in its motion for reargument after the Court granted Spirt's motion for summary judgment; TIAA and CREF make the argument again in their motion for partial relief from the *Spirt* judgment. Indeed, from all appearances, TIAA and CREF were utterly indifferent to the news that Superintendent Lewis had apparently concluded that the TIAA–CREF approach to deferred annuitants' past contributions is required by the New York Insurance Law. With all due respect to Superintendent Lewis, it appears that TIAA and CREF, like the Court, have been well aware throughout the litigation of the *Spirt* action that the question whether CREF is required to use sex-merged mortality tables with respect to past contributions by deferred annuitants is a question that will be decided purely on the basis of Title VII and that ultimately has nothing whatever to do with the New York Insurance Law or with Superintendent Lewis' interpretation of that law.

sex-segregated mortality tables with respect to past contributions from deferred annuitants, and has not alleged any sort of causal nexus between the view of Superintendent Lewis and the conduct of TIAA and CREF. The mere fact that a state regulatory agency approves of a regulated entity's action does not transmute the regulated entity's action into "state action." *Jackson v. Metropolitan Edison Co., supra*, 419 U.S. at 357, 95 S.Ct. at 457.

Thus, the facts alleged by Spirt in her supplemental complaint and in her additional submissions to the Court would, if proven, be insufficient for the Court to find that the State of New York "compelled" or even "encouraged" either (1) the original TIAA–CREF decision to use sex-segregated mortality tables in calculating any benefits to be received by a participant in the TIAA and CREF plans or (2) the subsequent TIAA–CREF decision not to adopt sex-merged mortality tables in calculating the benefits that persons retiring on or after May 1, 1980, will receive on the basis of their contributions to the TIAA and CREF plans made before May 1, 1980. As a result, Spirt has failed to allege the "state action" that is a necessary component of a Section 1983 claim against TIAA and CREF.[12] In the event the Court's September 18, 1979, judgment is affirmed on appeal, and Superintendent Lewis thereafter refuses to approve a CREF proposal to use sex-merged mortality tables to calculate the benefits that persons retiring on or after May 1, 1980, will receive on the basis of their contributions to the TIAA and CREF plans made before May 1, 1980, it would, of course, be open to Spirt to raise the state action issue once again by commencing a new Section 1983 action on the basis of these intervening events.

Accordingly, Spirt's motion is denied in its entirety. Insofar as this motion seeks summary judgment against Superintendent Lewis pursuant to Rule 56, Fed.R.Civ.P., it is denied because the issue whether Superintendent Lewis violated the federal constitution or any federal statute by his refusal to approve Unisex II is not justiciable in the context of the *Spirt* action. Insofar as this motion has been deemed to seek an amendment of the *Spirt* judgment pursuant to Rule 60(b)(5), Fed.R.Civ.P., it is denied because Spirt has not alleged facts from which the Court could find that the State of New York compelled or even encouraged any of the conduct by TIAA and CREF that Spirt contends was unconstitutional. The TIAA–CREF cross-motion to dismiss the supplemental complaint against Superintendent Lewis is granted. The denial of Spirt's motion insofar as it relies on Rule 56 and the grant of the TIAA–CREF cross-motion to dismiss are without prejudice, on grounds of *res judicata*, collateral estoppel, "law of the case," or *stare decisis*, or under any other theory that counsel might one day proffer, to the claims presented against Superintendent Lewis by the EEOC in the *Lewis* action.

**12.** The Court is, of course, well aware of the line of cases where the requisite state action has been found merely by virtue of the plaintiff's allegation that the private defendant acted jointly with a state official named as a co-defendant. *See, e.g., Dennis v. Sparks*, 449 U.S. 24, 27–28 & n.4, 101 S.Ct. 183, 186 & n.4, 66 L.Ed.2d 185 (1980); *Lugar v. Edmondson Oil Co.*, 639 F.2d 1058, 1062–65 (4th Cir.) (en banc), *cert. granted*, 452 U.S. 937, 101 S.Ct. 3078, 69 L.Ed.2d 951 (1981). This line of cases was not implicated at the time of the Court's decision in *Spirt II* because no state official was then named as a defendant in the *Spirt* action. Nor is it implicated now by the mere fact that Spirt has filed a supplemental complaint that names Superintendent Lewis as a supplemental defendant.

Nowhere in her supplemental complaint does Spirt allege or complain of any joint conduct between Superintendent Lewis on the one hand and TIAA and CREF on the other. On the contrary, Spirt's claim against Superintendent Lewis is, as explained in text *supra*, based on conduct wholly distinct from her claim against TIAA and CREF. Thus, rather than arguing that TIAA and CREF have acted *in concert* with Superintendent Lewis, Spirt has based her state action argument entirely on the (untenable) theory that TIAA and CREF performed their challenged conduct in obedience to Superintendent Lewis' orders. *See* Supplemental Complaint ¶ 11.

### III. The TIAA–CREF Motion for Relief from Judgment

The Court now turns to the third and final topic of today's opinion, namely, the TIAA–CREF motion, pursuant to Rule 60(b), Fed.R.Civ.P., for partial relief from the *Spirt* judgment. The Court begins its discussion of this motion, as it began its discussion of the motions relating to Spirt's supplemental complaint, by clearing the jurisdictional air. As the Court reads the TIAA–CREF motion papers, the only portion of Rule 60(b) on which this motion could even arguably be based is Rule 60(b)(5), Fed.R.Civ.P., on the theory that "it is no longer equitable that [a particular part of] the [*Spirt*] judgment should have prospective application." However, as noted in part II of today's opinion, this portion of Rule 60(b) only supports a motion for relief from judgment if the movant contends that a *prospective* judgment of a court has been rendered inequitable by events *subsequent* to the court's entry of that judgment. 7 *Moore's Federal Practice, supra*, ¶ 60.26[4], at 334–39. Here, the TIAA–CREF effort to persuade the Court to modify the *Spirt* judgment is not based on any event subsequent to entry of the *Spirt* judgment. Further, TIAA and CREF purport, by their motion, to attack only a *retrospective* aspect of the *Spirt* judgment. In the normal course, then the Court would have no jurisdiction to hear the TIAA–CREF motion. However, the order of remand issued in the *Spirt* action by the Court of Appeals directs this Court to consider the issue raised by the TIAA–CREF motion. The Court accordingly deems the TIAA–CREF motion to rely on Rule 60(b)(5), Fed.R.Civ.P., and finds that the mandate issued in the *Spirt* action by the Court of Appeals provides any necessary jurisdictional basis for this Court to hear the TIAA–CREF motion.

By their motion for relief from judgment, TIAA and CREF seek amendment of that part of the *Spirt* judgment that requires CREF to use sex-merged mortality tables to calculate the benefits to be received by deferred annuitants on account of their contributions to the CREF plan made *prior to* May 1, 1980. TIAA and CREF argue that the "good-faith reliance defense," a defense not considered by the Court in *Spirt II* or *Spirt III*, is available in the *Spirt* action; they urge that, as a result of the availability of this defense, CREF should be permitted to use *sex-segregated* mortality tables with respect to contributions made by deferred annuitants prior to May 1, 1980. Spirt agrees that the good-faith reliance defense is available in the *Spirt* action, but believes that this fact necessitates amendment of the *Spirt* judgment only to permit CREF to use sex-segregated mortality tables with respect to contributions made by deferred annuitants prior to the decision of the United States Supreme Court in *City of Los Angeles v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). LIU, the EEOC, and the AAUP all view the good-faith reliance defense to be wholly unavailable in the *Spirt* action, and consequently argue that this defense presents no basis for amendment of the *Spirt* judgment. These three parties take differing views, however, on the extent to which the *Spirt* judgment would have to be amended in the event the good-faith reliance defense *were* available in the *Spirt* action. LIU believes that the availability of this defense would necessitate amendment of the *Spirt* judgment to permit CREF to use sex-segregated mortality tables with respect to contributions made by deferred annuitants prior to this Court's decision in *Spirt II*; the AAUP states that the amendment of the *Spirt* judgment would only have to permit CREF to use sex-segregated mortality tables with respect to contributions made by deferred annuitants prior to the Supreme Court's decision in *City of Los Angeles v. Manhart, supra*; the EEOC argues that this amendment would only have to permit CREF to use sex-segregated mortality tables with respect to contributions made by deferred annuitants prior to the issuance, in 1972, of the EEOC's guidelines on the applicability of Title VII to educational institutions. In short, the parties to the *Spirt* action have presented the Court with five different approaches to the issue raised by the TIAA–CREF motion for relief from judgment.

The TIAA–CREF motion for relief from judgment is based on two separate statutory provisions, one of which is contained in Title VII and the second of which is part of section 10 of the Portal-to-Portal Act.[13] The relevant portion of Title VII reads as follows:

In any action or proceeding [under Title VII] based on any alleged unlawful employment practice, no person shall be subject to any liability or punishment for or on account of (1) the commission by such person of an unlawful employment practice if he pleads and proves that the act or omission complained of was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission.... Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that (A) after such act or omission, such interpretation or opinion is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect....

42 U.S.C. § 2000e–12(b). The relevant portion of section 10 of the Portal-to-Portal Act reads as follows:

In any action or proceeding based on any act or omission on or after May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section .... Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

29 U.S.C. § 259(a).

The language of these two sections is virtually identical. Each section provides, in essence, that no person "shall be subject to any liability or punishment for or on account of" any violation by such person of the statutory provisions to which the section applies, if such person "pleads and proves that the [discriminatory] act or omission complained of was [committed] in good faith ... reliance on" a written interpretation issued by the agency authorized to

---

**13.** The TIAA–CREF theory that § 10 of the Portal-to-Portal Act can provide the basis for a defense to a Title VII action is as follows. Section 10 of the Portal-to-Portal Act provides, by its terms, a defense to an action under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–19. The Equal Pay Act, 29 U.S.C. § 206(d), is part of the Fair Labor Standards Act of 1938; thus, § 10 of the Portal-to-Portal Act provides a defense under the Equal Pay Act. Now, the so-called "Bennett Amendment" to Title VII, 42 U.S.C. § 2000e–2(h), provides that "[i]t shall not be an unlawful employment practice under [Title VII] for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of [the Equal Pay Act]." TIAA and CREF theorize that the defense provided by § 10 of the Portal-to-Portal Act is among the Equal Pay Act defenses incorporated into Title VII by the Bennett Amendment. In the Court's view, this interpretation is not at all supported by the statutory language (the defense afforded by § 10 of the Portal-to-Portal Act is not, as required by the Bennett Amendment, a defense "authorized by the provisions of" the Equal Pay Act, but rather is a defense "authorized by the provisions of" the Portal-to-Portal Act), and is seriously undercut by the Supreme Court's decision in *County of Washington v. Gunther,* 452 U.S. 161, 171, 101 S.Ct. 2242, 2249, 68 L.Ed.2d 751 (1981) (holding "that only differentials attributable to the four affirmative defenses of the Equal Pay Act are 'authorized' by that Act within the meaning of the Bennett Amendment"). *But see City of Los Angeles v. Manhart, supra,* 435 U.S. at 719–20 n.36, 98 S.Ct. at 1380–81 n.36 (citing § 10 of the Portal-to-Portal Act for the dictum that rulings of the Wage and Hour Administrator "provide a defense in [Title VII] sex discrimination cases"). Given the Court's holding that the defense provided by § 10 of the Portal-to-Portal Act is not available in the *Spirt* action even if it might be in some other Title VII action, the Court need not adjudicate the validity of the TIAA–CREF incorporation theory.

interpret the statutory provisions to which .the section applies. For either of these sections to apply in the *Spirt* action, then, and thereby to provide the basis for the TIAA–CREF motion for partial relief from the *Spirt* judgment, two conditions must pertain: (1) the *Spirt* judgment must subject CREF to a liability or punishment on account of discriminatory acts committed by CREF *prior to* the entry of the *Spirt* judgment,[14] and (2) CREF must prove that it committed these discriminatory acts *in good faith reliance on* a written interpretation issued by the agency authorized to interpret the statutory provisions to which the section applies.

■ The first prong of this test has not been satisfied here, because the relief ordered by the *Spirt* judgment is not concerned with any unlawful acts committed by CREF prior to the entry of the *Spirt* judgment. As the Court clearly held in *Spirt II*, the CREF plan violates Title VII because it uses sex-segregated mortality tables to calculate the benefits to be received by plan participants on account of their contributions to the CREF plan. 475 F.Supp. at 1315. Under the CREF plan, however, CREF's unlawful use of sex-segregated mortality tables does not occur with respect to any particular plan participant until the day that the participant retires. *Id.* Prior to that day, the participant is treated in an entirely sex-neutral fashion by the plan: the contribution aspect of the plan is identical for men and women, *id.* at 1300; moreover, the plan does not promise that, on the day of the participant's retirement, any particular mortality tables will be used to calculate the benefits to which the participant is entitled, *id.* at 1316 n.28. Thus, when the Court entered the *Spirt* judgment on September 18, 1979, CREF had not, *in the past*, performed any unlawful discriminatory act with respect to any plan participant who would retire on or after May 1, 1980. The *Spirt* judgment thus did nothing more than order CREF not, *in the future*, to perform any unlawful act with respect to any plan participant who would retire on or after May 1, 1980. The *Spirt* judgment said nothing with respect to any other plan participant. Thus, the *Spirt* judgment does not subject CREF to a liability or punishment on account of any discriminatory acts committed by CREF *prior to* the entry of the *Spirt* judgment. Consequently, neither of the statutory sections relied upon by TIAA and CREF in support of their proffered good-faith reliance defense is applicable in the *Spirt* action. The TIAA–CREF motion for partial relief from the *Spirt* judgment is accordingly denied.

## CONCLUSION

The motions that are decided by today's opinion are disposed of as follows: (1) The EEOC's motion in 74 Civ. 1674(RJW) for leave to intervene in 74 Civ. 1674(RJW) is granted in part and denied in part. (2) The EEOC's motion in 74 Civ. 1674(RJW) for summary judgment against Superintendent Lewis is denied. (3) The EEOC's motion in 74 Civ. 1674(RJW) for an order consolidating 74 Civ. 1674(RJW) with 81 Civ. 881(RJW) for all purposes is denied. (4) The EEOC's motion in 81 Civ. 881(RJW) for

---

14. In other words, the two sections relied upon by TIAA and CREF are triggered only by an action that seeks retroactive relief, that is, an action where the liability or punishment sought to be imposed on a person is in the nature of compensation for an allegedly unlawful act done in the past. Thus, the courts have consistently held that these two sections provide a defense only to an award of damages or back pay. *See Rosenfeld v. Southern Pacific Co.*, 519 F.2d 527, 529 (9th Cir. 1975) (under 42 U.S.C. § 2000e–12(b)); *Yott v. North American Rockwell Corp.*, 428 F.Supp. 763, 768 (C.D.Cal. 1977), aff'd, 602 F.2d 904 (9th Cir. 1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1316, 63 L.Ed.2d 761 (1980) (under 42 U.S.C. § 2000e–12(b)); *Northwestern-Hanna Fuel Co. v. McComb*, 166 F.2d 932, 939 (8th Cir. 1948) (under 29 U.S.C. § 259(a)). The Court rejects any argument that these two sections might be triggered by an action that seeks prospective relief, that is, an action where the liability or punishment sought to be imposed on a person is in the nature of prohibiting the commission of an allegedly unlawful act proposed to be done in the future. Were these two sections capable of being read this broadly, the good-faith reliance defense would arguably preclude an award of any injunctive relief in the *Spirt* action at all.

an order consolidating 81 Civ. 881(RJW) with 74 Civ. 1674(RJW) for all purposes is denied. (5) The Moshowitz-Alexion-Clynes motion in 81 Civ. 881(RJW) for leave to intervene in 81 Civ. 881(RJW) is denied. (6) The Moshowitz-Alexion-Clynes motion in 81 Civ. 881(RJW) for summary judgment against Superintendent Lewis is denied. (7) The AAUP's motion in 81 Civ. 881(RJW) for leave to intervene in 81 Civ. 881(RJW) is denied. (8) The ANA's motion in 81 Civ. 881(RJW) for leave to intervene in 81 Civ. 881(RJW) is denied. (9) The AAUP's motion in 74 Civ. 1674(RJW) for leave to intervene in 74 Civ. 1674(RJW) is granted in part and denied in part. (10) Spirt's motion in 74 Civ. 1674(RJW) for summary judgment against Superintendent Lewis is denied. (11) The TIAA–CREF motion in 74 Civ. 1674(RJW) to dismiss Spirt's supplemental complaint is granted. (12) The TIAA–CREF motion in 74 Civ. 1674(RJW) for relief from the final judgment entered by the Court in 74 Civ. 1674(RJW) is denied.

The only pending motion in 74 Civ. 1674(RJW) or 81 Civ. 881(RJW) that is not decided by today's opinion is the EEOC's motion in 81 Civ. 881(RJW) for summary judgment against Superintendent Lewis. Superintendent Lewis shall serve and file his opposition to this motion within twenty (20) days of the date of this opinion. The other defendants in 81 Civ. 881(RJW) shall serve and file any comments they have on this motion within the same period of time. The EEOC, and *amici curiae* in 81 Civ. 881(RJW), shall have ten (10) days from the date such opposition is received to serve and file any reply papers they may wish to present.

It is so ordered.