801 F.2d 593
 5 Fed.R.Serv.3d 1315
 UNITED STATES of America, Plaintiff,
and
Yonkers Branch-National Association for the Advancement of
Colored People, et al., Plaintiffs-Intervenors-Appellees,
v.
YONKERS BOARD OF EDUCATION, City of Yonkers, and Yonkers
Community Development Agency, Defendants,
and
Joseph Galvin, Alfred T. Lamberti, Paul Weintraub, Frank
Furgiuele, Joseph M.A. Furgiuele, Jerald
Katzenelson and Salvatore Ferdico and
the Crestwood Civic
Association, Inc.,
Appellants.
CITY OF YONKERS and Yonkers Community Development Agency,
Third-Party-Plaintiffs,
v.
UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
and Secretary of Housing and Urban Development,
Third-Party-Defendants.
 No. 150, Docket 86-6126.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 3, 1986.
Decided Sept. 15, 1986.
 
 Michael H. Sussman, Yonkers, N.Y. (Sussman & Sussman, Yonkers, N.Y., of counsel), for plaintiffs-intervenors-appellees Yonkers Branch-NAACP, et al.
 M. William Munno, Esq., New York City (James F.X. Hiler, Ronald Nimkoff, Heidi B. Goldstein, Seward & Kissel, New York City, of counsel), for appellants.
 Michael W. Sculnick, New York City (Vedder, Price, Kaufman, Kammholz & Day, New York City, of counsel), for amicus curiae City of Yonkers.
 Before MANSFIELD, PIERCE and PRATT, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 This massive litigation centers upon the alleged racial segregation of schools and racially discriminatory development of subsidized multi-family public housing in the City of Yonkers ("City") in New York. The action was commenced in the United States District Court for the Southern District of New York by the United States Department of Justice in 1980. The Yonkers Branch-National Association for the Advancement of Colored People ("NAACP") was permitted to intervene as plaintiff in 1981. In November 1985, the district court, Leonard Sand, Judge, issued a lengthy and detailed opinion which held that the City and the Yonkers Community Development Agency ("YCDA") had intentionally segregated Yonkers's schools and housing by race. United States v. Yonkers Board of Education, 624 F.Supp. 1276 (S.D.N.Y.1985). Pursuant to that opinion, and after three months of preceedings, on May 28, 1986 the district court entered a Housing Remedy Order, which required, inter alia, that the City execute a grant agreement with the United States Department of Housing and Urban Development ("HUD") and submit at least two proposed multi-family housing sites. If the City failed either to submit any sites at all or to submit two sites acceptable to HUD, the order directed that the City would be deemed to have submitted three specified sites, which were identified in the order.
 
 
 2
 The appellants ("Homeowners"), who are proposed defendants-intervenors, own homes near two of the court-specified sites known as School 15 and Walt Whitman in Crestwood, a neighborhood in eastern Yonkers, and include a recently formed Yonkers civic association. They oppose public housing being built on these two sites, which are zoned for single-family housing. Fearing that the City would fail to select acceptable alternative sites, and believing their federal constitutional rights to be violated by the Housing Remedy Order, the Homeowners moved to intervene of right as defendants on June 10, 1986. Fed.R.Civ.P. 24(a). They seek intervention, they argue, so that they can present new evidence, including expert testimony, bearing on the issues of suitability of various other sites and on the court-specified sites. On June 26, 1986, Judge Sand heard argument on the motion, and, noting that the issue of sites had already been the subject of exhaustive inquiry by the court and that the taking of further evidence as proffered by the appellants would involve delay, denied the motion as untimely. The Homeowners appeal from that denial.[1]
 
 
 3
 Federal Rule of Civil Procedure 24 sets forth the standards for intervention of right.[2] "If [the motion] is untimely, intervention must be denied." NAACP v. New York, 413 U.S. 345, 365, 93 S.Ct. 2591, 2602, 37 L.Ed.2d 648 (1973); United States Postal Service v. Brennan, 579 F.2d 188, 191 (2d Cir.1978). The timeliness requirement is flexible and the decision is one entrusted to the district judge's sound discretion. NAACP v. New York, 413 U.S. at 366, 93 S.Ct. at 2603; Kirkland v. New York State Department of Correctional Services, 711 F.2d 1117, 1128 (2d Cir.1983) (citing Stotts v. Memphis Fire Department, 679 F.2d 579, 582-86 (6th Cir.), cert. denied, 459 U.S. 969, 103 S.Ct. 297, 74 L.Ed.2d 280 (1982); Culbreath v. Dukakis, 630 F.2d 15, 24 (1st Cir.1980)), cert. denied, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984). The district judge's decision will be reversed only upon a finding of abuse of discretion. NAACP v. New York, 413 U.S. at 366, 93 S.Ct. at 2603. See generally 7C C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 1916 (2d ed. 1986). The district court is not given free rein: it must not consider merely the length of time the litigation or proceeding has been pending, but should base its determination upon all of the circumstances of the case. NAACP v. New York, 413 U.S. at 365-66, 93 S.Ct. at 2602-03. Courts have used various factors in weighing the circumstances.[3]
 
 
 4
 In commenting on the Homeowners' motion, the district judge observed,
 
 
 5
 The remedy proceeding has been going forward for several months. It is imperative that the remedy go forward and go forward within particular time constraints which have been set forth in the court's trial orders. It simply would result in nothing other than delay to permit intervention on behalf of the members of any particular community designated at any particular time to be the area in which housing will be created or made available for purposes of rectifying constitutional violations which the court has found to exist.
 
 
 6
 Tr. of June 29, 1986, at 13. It is evident that delay in this six year old suit was singled out as the court's particular concern, especially given that the court already had made a lengthy and exhaustive inquiry as to suitable sites. See LaRouche v. Federal Bureau of Investigation, 677 F.2d 256, 257-58 (2d Cir.1982); see also NAACP v. New York, 413 U.S. at 369, 93 S.Ct. at 2604; Stallworth v. Monsanto Co., 558 F.2d 257, 265 (5th Cir.1977). Judge Sand was also concerned that available federal funds from HUD for public housing in Yonkers ($7 million) not be jeopardized. As of May 28, 1986, HUD's funding authority was to expire on September 30, 1986.
 
 
 7
 The sites that concern the Homeowners were specifically proposed by the plaintiffs no later than March 1986. This information was available in the comments of the NAACP and the United States on the City's proposed remedial plan, which comments were submitted to the district court and became page one news in the Yonkers local newspaper published on March 15, 1986, and on page D1 on March 13, 1986.[4] In addition, the issue of sites in eastern Yonkers has been the subject of considerable discussion in Yonkers at least since the district court's opinion finding liability was filed in November 1985. As the district judge explained in denying intervention: "it has been years, literally years [during] which there has been discussion, not only in this court, but discussion elsewhere in Yonkers of these particular sites as being target sites for these purposes." Tr. of June 29, 1986, at 14. Thus, any prejudice to the Homeowners resulting from the denial of intervention may be attributed to their own failure to seek intervention when they first had reason to become aware that the sites at issue would be considered by the court. See NAACP v. New York, 413 U.S. at 367-68, 93 S.Ct. at 2603-04, wherein the court observed:
 
 
 8
 [Under the circumstances,] it was incumbent upon the appellants ... to take immediate affirmative steps to protect their interests either by supplying [the pertinent agency] with any information they possessed ... or by presenting that information to the District Court itself by way of an immediate motion to intervene.... * Appellants failed to take either of these affirmative steps.
 
 
 9
 (footnote omitted). We are not suggesting that dilatoriness alone dictates denial of intervention. However, in making the choice between the possibility of harm to the late-arriving prospective intervenors as against the possible harm to parties who have participated diligently during the pertinent portions of this litigation, it does not strike us as unjust that intervention on the part of the late-arrivers must yield under all of the circumstances herein. See LaRouche, 677 F.2d at 257.
 
 
 10
 It cannot be gainsaid that the district court has a continuing responsibility to promote the orderly administration of justice for all persons. Here, however, the Homeowners are seeking to relitigate issues which have already been decided after lengthy proceedings. The inquiry into appropriate sites was extensive; it covered a period of three months and culminated in six days of hearings filling 939 transcript pages.
 
 
 11
 The Homeowners argue that their efforts to intervene after the Housing Remedy Order was filed should be considered timely because they could not have learned of the district court's site designation until the court issued the order on May 28, 1986. We disagree. Although courts have held that intervention after the liability phase of a litigation can be timely when the remedy will affect the rights of the intervening third party,[5] in this case such a holding would be inappropriate. As noted, the Homeowners did not seek intervention until after the Housing Remedy Order was entered, more than three months after the remedy proceedings were underway. This resembles post-judgment intervention, which is generally disfavored because it usually creates delay and prejudice to existing parties, see Crown Financial Corp. v. Winthrop Lawrence Corp., 531 F.2d 76, 77 (2d Cir.1976) (per curiam); Spirt v. Teachers' Insurance & Annuity Association, 93 F.R.D. 627, 637 (S.D.N.Y.), aff'd in part and rev'd in part on other grounds, 691 F.2d 1054 (2d Cir.1982), vacated on other grounds, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983); Firebird Society of New Haven, Inc. v. New Haven Board of Fire Commissioners, 66 F.R.D. 457, 464-65 (D.Conn.), aff'd mem., 515 F.2d 504 (2d Cir.1975), and undermines the orderly administration of justice. This case presents a special problem in this regard. If we were to remand this case for the purpose of intervention, and the district court were to accept the Homeowners' arguments and designate new sites in other neighborhoods, one can envision waves of new homeowners seeking intervention so that they might challenge the new order. We do not construe Rule 24(a) to require the district court to allow the intervention of one wave of homeowners after another as new sites are designated. Such a result would make the achievement of a final remedy nearly impossible. In the interest of finality, there must come a time, once all affected parties' opportunities to protect their interests have passed, when the remedy, if otherwise lawful, must be allowed to proceed.
 
 
 12
 The Homeowners stress that any effort to intervene prior to entry of the Housing Remedy Order would have been premature since no site in their neighborhood had yet been designated. Hence, they contend their interests before the order was filed did not differ from the interests of any other property owner in Yonkers and were at best only speculative. See Stallworth, 558 F.2d at 264-65. They suggest that the district court would have denied such a premature motion for intervention either because the Homeowners lacked an interest in the litigation sufficient for intervention or because their rights were adequately protected by those already parties.[6] We do not agree. The Homeowners had a basis for concern distinct from that of other Yonkers residents prior to the entry of the Housing Remedy Order. Specifically, the subject sites were proposed approximately three months before the order's entry. Any interest the Homeowners have in this action began to gestate when it became generally known that these sites had been proposed early in the remedy proceedings.[7]
 
 
 13
 We have considered the appellants' other arguments and have found them to be without merit. We hold that the district judge did not abuse his discretion in finding the Homeowners' motion to intervene to be untimely. Since the Homeowner's motion was untimely, we need not decide whether the Homeowners satisfy the other requirements of Rule 24.
 
 
 14
 The district court's denial of the Homeowners' motion to intervene is affirmed.[8]
 
 
 
 [1]
 In a separate appeal to be heard at a later date, the City challenges the finding of liability and the remedies imposed by the district court
 
 
 [2]
 Fed.R.Civ.P. 24(a) provides:
 (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 (emphasis added).
 
 
 [3]
 See Note, The Timeliness Threat to Intervention of Right, 89 Yale L.J. 586, 593-94 n. 40 (1980)
 
 
 [4]
 See The Herald Statesman, Mar. 15, 1986, at 1, col. 1; id., Mar. 13, 1986, at D1, col. 3
 
 
 [5]
 See, e.g., Spirt v. Teachers' Ins. & Annuity Ass'n, 93 F.R.D. 627, 637 (S.D.N.Y.), aff'd in part and rev'd in part on other grounds, 691 F.2d 1054 (2d Cir.1982), vacated on other grounds, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983); United States v. Hooker Chems. & Plastics Corp., 540 F.Supp. 1067, 1082-83 (W.D.N.Y.1982); see also Fleming v. Citizens for Albemarle, Inc., 577 F.2d 236, 237-38 (4th Cir.1978), cert. denied, 439 U.S. 1071, 99 S.Ct. 842, 59 L.Ed.2d 37 (1979); Liddell v. Caldwell, 546 F.2d 768, 771 (8th Cir.1976)
 
 
 [6]
 Interestingly, a similar motion was made in this case. The Yonkers Federation of Teachers ("YFT") moved to intervene prior to the filing of a remedial plan on the basis of a belief that the Yonkers School District's plan might abrogate YFT's contractual rights under a collective bargaining agreement. Judge Sand denied that motion, but did so without prejudice to renew after the school district actually submitted a proposed remedial plan. After the plan was submitted, and it appeared that the proposed plan would abrogate YFT's rights, YFT renewed its motion to intervene, and it was granted. Similarly, in March the plaintiffs submitted proposed housing sites to the district court. Included in the proposal were the sites in the Homeowners' neighborhood. Thus, it seems improbable that, once the two sites at issue had been proposed by the plaintiffs, Judge Sand would have denied intervention as premature
 
 
 [7]
 Cf. Little Rock School Dist. v. Pulaski County Special School Dist. No. 1, 738 F.2d 82, 83-84 (8th Cir.1984) (per curiam) (teachers' organization could intervene in action seeking consolidation of school districts because members had interest in existing contractual arrangement); Vulcan Soc'y of Westchester, Inc. v. Fire Dep't of White Plains, 79 F.R.D. 437, 439-41 (S.D.N.Y.1978) (in civil rights action alleging employment discrimination, which action could affect unions' contracts, unions permitted to intervene as of right)
 The cases cited by the Homeowners are inapposite. In Stallworth v. Monsanto, Inc., the Fifth Circuit suggested that intervention should not be allowed when little is known by the intervenors about the ramifications of the lawsuit. 558 F.2d 257, 265 (5th Cir.1977). In the case at bar, however, the Homeowners should have known the possible ramifications as early as March 1986.
 In United Airlines, Inc. v. McDonald, the Supreme Court stated that it would be unwise to allow putative class members to intervene immediately for the purpose of appealing denial of class certification where it would be years before the denial would become appealable upon entry of a final judgment. 432 U.S. 385, 394 n. 15, 97 S.Ct. 2464, 2470 n. 15, 53 L.Ed.2d 423 (1977). In the case before us, the proposed intervenors' time to participate was at least during the remedy proceeding.
 
 
 [8]
 Our affirmance is not intended to express a view on any application by the Homeowners to participate in the main appeal by the City of Yonkers as amicus curiae or otherwise