**In re The DEPARTMENT OF ENERGY
STRIPPER WELL EXEMPTION
LITIGATION.**

**TECA No. 10–74.**

Temporary Emergency Court of Appeals.

Argued May 4, 1988.
Decided Oct. 14, 1988.

See also 653 F.Supp. 108.

Philip P. Kalodner, Philadelphia, Pa., was on the brief, for appellants Utilities, Transporters and Mfrs.

Andrew P. Miller, Dickstein, Shapiro and Morin, with whom Milton B. Whitfield and J. Bradley Ortins of the same firm, Washington, D.C., were on the brief, for appellee States Delaware, Iowa, Louisiana, North Dakota, Rhode Island and West Virginia.

Neil F. Hartigan, Atty. Gen., and Michael J. Hayes, Deputy Atty. Gen., Chicago, Ill., were on the brief, for appellee State of Ill.

Dave Frohnmayer, Atty. Gen., and Donald C. Arnold, Chief Counsel, Dept. of Justice, Salem, Or., were on the brief, for appellee State of Or.

LeRoy S. Zimmerman, Atty. Gen., and Eugene F. Waye, Deputy Atty. Gen., Harrisburg, Pennsylvania, were on the brief, for appellee Com. of Pa.

Bernard Nash, Edward G. Modell and Eileen P. Shannon, Nash, Railsback and Plesser, Washington, D.C., were on the brief for appellee States Hawaii, Illinois, Kansas, Nebraska, Nevada, North Carolina, Guam and the Virgin Islands.

James F. Flug and Paula Dinerstein, Lobel, Novins, Lamont and Flug, Washington, D.C., were on the brief, for appellee States Alabama, California, Connecticut, Idaho, Indiana, Maryland, Michigan, Mississippi, Montana, Ohio, South Dakota, Vermont, Wisconsin and Wyoming.

John Van de Kamp, Atty. Gen., and Yeoryios C. Apallas, Deputy Atty. Gen., San Francisco, Cal., were on the brief, for appellee State of Cal.

Stephen C. Skubel, Office of the Gen. Counsel, United States Dept. Of Energy, Washington, D.C., with whom Marc Johnston of the same office, and Theodore A. Miles, Floyd I. Robinson and Edward Levy, Economic Regulatory Admin., Washington, D.C., were on the brief, for appellee U.S. Dept. of Energy.

Before GRANT, PECK and METZNER, Judges.

GRANT, Judge.

Before this court is an appeal of the district court's denial of intervention in *In re Department of Energy Stripper Well Exemption Litigation*, M.D.L. No. 378 (D.Kan.). Appellants have challenged both the district court's jurisdiction and its determination that the requirements for intervention under Rule 24 of the Federal Rules of Civil Procedure have not been met. For the following reasons, we affirm the district court's judgment.

## I. *Background*

Appellants are a group of six electric utility companies, fourteen shipping companies, and four paper manufacturers (Utilities, Transporters, and Manufacturers)[1] who sought to intervene in multi-district litigation number M.D.L. 378 pending before the district court for the District of Kansas.[2] A brief outline of this litigation is necessary to the understanding of the district court's denial of intervention.

M.D.L. 378 is the consolidation of cases from different districts concerning the validity of Ruling 1974–29 of the Federal Energy Administration, which is now the Department of Energy (DOE). Under that ruling, injection wells were excluded from the well count when applying the stripper well exemption from allocation and price regulation of crude petroleum produced from stripper well leases.

In *Energy Reserves Group, Inc. v. Federal Energy Administration*, 447 F.Supp. 1135 (D.Kan.1978), the United States District Court for the District of Kansas found the ruling invalid because it was promulgated without satisfying the rulemaking requirements of the Administrative Proce-

---

**1.** The UTILITIES are Consolidated Edison Company of New York, Inc., Southern California Edison Company, Long Island Lighting Company, Pacific Gas & Electric Company, Orange and Rockland Utilities Inc. and San Diego Gas and Electric Company. The TRANSPORTERS are Yamashita–Shinnihon Steamship Co. Ltd., Nippon Yusen Kaihsa, Japan Line Ltd., n.v. Bocimar s.a., Star Shipping A/S, Globe Trade and Transport Company Ltd., Showa Line Ltd., The Sanko Steamship Co. Ltd., Island Navigation Corporation (Ship Management) Ltd., Kawasaki Kisen Kaisha Ltd., Mitsui O.S.K. Lines Ltd., Daichi Chuo Kisen Kaisha, Flota Mercante Grancolombiana S.A., and Shinwa Kaiun Kaisha Ltd. The MANUFACTURERS are Champion International Corporation, Weyerhauser Company, Federal Paperboard Company Inc., and International Paper Company.

**2.** *See In re Department of Energy Stripper Well Exemption Litigation*, M.D.L. No. 378, Temporary Emergency Court of Appeals No. 10–76. Appellants sought intervention in 10–76 to oppose the motion of the states pending before the court.

dure Act. The court enjoined enforcement of the regulations in question, but ordered the oil producers to deposit into escrow the difference between the stripper well price and the controlled price of crude oil affected by the injunction. As of October 31, 1982, the escrow fund contained over one billion dollars. *See In re Dep't of Energy Stripper Well Exemption Lit.,* 578 F.Supp. 586, 589 (D.Kan.1983) (summarizes the early stages of this case).

This appellate court ultimately upheld the validity of Ruling 1974–29. *In re Dep't of Energy Stripper Well Exemption Lit.,* 690 F.2d 1375, 1392 (TECA 1982), *cert. denied,* 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983). Upon remand, the district court saw its duty thus:

> The effect of TECA's decision is to declare the funds deposited in escrow to be overcharges received due to violations of the petroleum pricing regulations. The remaining task is the appropriate dispensation of the escrowed funds.

578 F.Supp. at 589. Recognizing the expertise of DOE's Office of Hearings and Appeals (OHA), which had developed procedures for refund claims in overcharge cases, the court ordered OHA to make preliminary findings concerning the particular impact of overcharges on various parties. The court retained jurisdiction over the action and over the escrow fund. *Id.* at 596–97.

After years of consideration of the proper restitution to be made and after extensive negotiations among the parties, a Final Settlement Agreement was created, signed by the parties, and approved by the district court on July 7, 1986. *See In re Dep't of Energy Stripper Well Lit.,* 653 F.Supp. 108 (D.Kan.1986). The Agreement provided for the distribution of approximately $1.4 billion, most of which had been held in escrowed accounts under the control of the district court. It established refund procedures, including the method by which individual claimants (such as appellants herein) could apply directly to DOE for refunds of crude oil overcharges.

However, the states took issue with DOE's implementation of certain provisions in the Agreement concerning individual claims. As a consequence, on May 26, 1987, they filed in district court "States' Motion to Enforce the Department of Energy's Obligations Relating to Crude Oil Overcharge Refund Proceedings Under the Final Settlement Agreement." TECA No. 10–76. On June 17, 1987, appellants sought to intervene or to participate as *amici curiae* in this case for the purpose of opposing States' Motion.

On July 8, 1987, the district court granted appellants leave to participate in the briefing as *amici curiae.* However, by order of July 23, 1987, the court denied appellants' motion to intervene on the ground that they had failed to satisfy all the elements required for intervention under Federal Rules of Civil Procedure 24(a)(2). The court specifically found that appellants were adequately represented by the Department of Energy, and that their motion to intervene was untimely. It further held that appellants, nonparties to the Settlement Agreement, had no right to inject themselves into a dispute between the DOE and the states as to the meaning of the Agreement between those two parties. Utilities, Transporters, and Manufacturers appeal that denial of the application to intervene.[3]

## II. *Jurisdiction*

As a preliminary matter, appellants assert that one reason for seeking intervention is to raise the issue of jurisdiction. They have not questioned the district court's federal-question jurisdiction under 28 U.S.C. § 1331,[4] or its exclusive jurisdiction under the Economic Stabilization Act, 12 U.S.C. § 1904 note.[5] Rather, they chal-

---

**3.** Appellants, participants as *amici curiae* in the appeal of case 10–76 as well, were permitted to file written briefs and to offer oral argument before this court.

**4.** 28 U.S.C. § 1331: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

**5.** 12 U.S.C. § 1904 note sets out the Economic Stabilization Act of 1970; section 211 contains the pertinent provision:

lenge the authority of the district court to make judgments that affect nonparties to that action. Specifically, they claim that the district court lacks jurisdiction to resolve a dispute between parties to the Settlement Agreement, namely the states and DOE, when such resolution will affect the rights of persons not parties to the Agreement, namely Utilities, Transporters, and Manufacturers.

The Supreme Court has consistently applied the general rule that one who is not a party to a judgment has no right to appeal therefrom. *Karcher v. May*, 484 U.S. 72, 108 S.Ct. 388, 392, 98 L.Ed.2d 327 (1987) (citing relevant cases). More specifically, this court has recognized that an entity that fails in the attempt to intervene in a case cannot appeal issues arising from the merits of the case. *Cities Service Co. v. Dep't of Energy*, 715 F.2d 572, 574 (TECA 1983), citing *Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501, 508 (3d Cir. 1976), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). However, the question of jurisdiction is a threshold issue, one which this court has the responsibility to raise *sua sponte* before it considers the merits of a case. *See, e.g., United States v. Storer Broadcasting Co.*, 351 U.S. 192, 206, 76 S.Ct. 763, 772, 100 L.Ed. 1081 (1956) (Harlan, J., concurring); *In re Miscott Corp.*, 848 F.2d 1190, 1192 (11th Cir.1988); *Arctic Corner, Inc. v. United States*, 845 F.2d 999, 1000 (Fed.Cir.1988); *Sector Refining, Inc. v. Enterprise Refining Co.*, 771 F.2d 496, 501 (TECA 1985). Thus we will consider the district court's jurisdiction as a preliminary matter.

We first find that the case before the district court of Kansas in No. 10–76, seeking interpretation of the Final Settlement Agreement to resolve a dispute between two signatories to that Agreement, was a cause of action arising out of federal law, specifically out of the laws and regulations concerning the Economic Stabilization Act. Under section 211 of the Act, Congress vested federal district courts and the Temporary Emergency Court of Appeals with exclusive jurisdiction over "cases and controversies arising under this title or under regulations or orders issued thereunder." Section 209 permits the court to order "restitution of monies received in violation of any such order or regulation." 12 U.S.C. § 1904 note. The restitutionary phase of the *Stripper Well* case was resolved by the Final Settlement Agreement, and the States' Motion in 10–76 sought to enforce that Agreement against DOE. The Act mandates that jurisdiction of such cases lies in the federal district courts. Neither party nor non-party has challenged the district court's authority on the grounds of federal-question or exclusive jurisdiction; nor do we.

■ The argument made by appellants is that the court does not have jurisdiction to make a determination that would affect nonparties to the Settlement Agreement. We disagree. Although it is clear that the court's determination of the States' Motion in 10–76 does not bind nonparties such as appellants, nevertheless the ruling is made neither in a void nor with such narrowness that it can never affect entities outside the sphere of litigation. The Supreme Court has clearly characterized the interest of a nonparty in a court's ruling:

> Of course, since the outsider is not before the court, he cannot be bound by the judgment rendered. This means, however, only that a judgment is not *res judicata* as to, or legally enforceable against, a non-party. *It obviously does not mean* either (a) *that a court may never issue a judgment that, in practice, affects a nonparty* or (b) that (to the contrary) a court may always proceed without considering the potential effect

§ 211. *Judicial review.*
(a) The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder. . . .

(c) Except as otherwise provided in this section, the Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder. . . .

on nonparties simply because they are not "bound" in the technical sense.

*Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968) (emphasis added).[6]

An interpretation of a settlement agreement may possibly affect any entity subject to the agreement. The district court, cognizant of its supervisory responsibility on behalf of all entities, allowed appellants to present their position as *amici curiae* and considered the potential effect of its ruling on nonparties. We find that the court below sensitively weighed the many concerns encompassed under the Settlement Agreement throughout the proceedings. Despite the fact that appellants were neither parties in M.D.L. 378 nor signatories to the Agreement, their interests have been recognized and incorporated into the Agreement and into the court's interpretation of the provisions being challenged by the states in their motion to enforce the Agreement.

However, the court's consideration of a nonparty's interest under a settlement agreement is a separate issue from the question of the court's jurisdiction to interpret and enforce the terms of that agreement. When it approved the Settlement Agreement, the district court stated that it was "subject to the Court's continuing equity power to insure compliance." *In re Stripper Well Exemption Litigation*, 653 F.Supp. at 121. It is well settled that a district court has the power to enforce a settlement agreement pending before it. *See Callie v. Near*, 829 F.2d 888, 890 (9th Cir.1987) (citing relevant cases). It is within a court's jurisdiction to retain the power to enforce an agreement entered into by the parties in settlement of litigation before that court.[7] *See, e.g., U.S. v. Baus*, 834 F.2d 1114, 1127 (1st Cir.1987); *Joy Mfg. v. National Mine Service Co.*, 810 F.2d 1127, 1128 (Fed.Cir.1987); *Fox v. Consolidated Rail Corp.*, 739 F.2d 929, 932 (3d Cir.1984), *cert. denied*, 469 U.S. 1190, 105 S.Ct. 962, 83 L.Ed.2d 968 (1985); *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir.1976), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976). We hold that the district court had jurisdiction, in this multi-district litigation in which the federal government is a party, to consider the States' Motion to enforce the Department of Energy's obligations under the settlement agreement. *See also MGPC, Inc. v. Canadian Hidrogas Resources, Ltd.*, 725 F.2d 1376, 1378 (TECA 1983).

### III. *The Issue of Intervention*

Appellants assert that they have a right to intervene in the litigation between the Department of Energy and the states. Rule 24(a) of the Federal Rules of Civil Procedure governs intervention of right in a federal court suit. In pertinent part it states:

(a) *Intervention of Right.* Upon timely application anyone shall be permitted

6. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), is the leading Supreme Court case interpreting the criteria for determining indispensable parties. Appellants have also asserted briefly on appeal that they were indispensable to this suit. Under Rule 19(b) of the Federal Rules of Civil Procedure, the "indispensable party" rule, a court must consider whether "the outsider's ability to protect his interest will be impaired or impeded by a judgment in his absence." *Prescription Plan Service Corp. v. Franco*, 552 F.2d 493, 497 (2d Cir.1977), summarizing the factors of Rule 19(b) enumerated in *Provident Tradesmens*. We note first that a proposed intervenor must establish that its interest as a nonparty may be impaired by disposition of the suit in which it wishes to intervene. *See Mothersill D.I.S.C. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 61 (5th Cir.1987); *Bradley v. Millik-*

*en*, 828 F.2d 1186, 1191 (6th Cir.1987). Because of the virtually identical tests to be applied for intervention and indispensability, and in light of the fact that the 19(b) issue was raised only at the appellate level, this court will consider only appellants' interest in intervening. See section III of the opinion.

7. We, like the First Circuit, are aware of the differences of opinion among the circuits concerning a district court's ability to enforce a settlement agreement in some situations. *See United States v. Baus*, 834 F.2d 1114, 1127 n. 13 (1st Cir.1987). In the case before us, however, concerning the U.S. Department of Energy and the states as parties in multi-district litigation, the federal courts have jurisdiction over a contract dispute. U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. §§ 1345–46.

to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

### A. Timeliness

■ The threshold determination is the timeliness of the application for intervention: "If it is untimely, intervention must be denied." *NAACP v. New York*, 413 U.S. 345, 365, 93 S.Ct. 2591, 2603, 37 L.Ed. 2d 648 (1972). Timeliness is to be determined from all the circumstances. *Id.* at 366, 93 S.Ct. at 2603. Factors to be considered include: (1) the point to which the suit has progressed; (2) the length of time appellants knew or should have known of the issue before applying to intervene; (3) appellants' attempts to protect their interest in a timely fashion; (4) the presence of unusual circumstances warranting intervention; and (5) prejudice to existing parties if intervention is granted. *Id.* at 366–69, 93 S.Ct. 2603–05. *See also Farmland Dairies v. Commissioner, N.Y. Dep't of Agriculture*, 847 F.2d 1038, 1044 (2d Cir. 1988) (adding as a factor the prejudice to the applicant if the motion is denied); *Bradley v. Milliken*, 828 F.2d 1186, 1191 (6th Cir.1987) (adding the factor of the purpose of the motion to intervene).

The determination of timeliness is within the sound discretion of the district court, "unless that discretion is abused, the court's ruling will not be disturbed on review." *NAACP v. New York*, 413 U.S. at 366, 93 S.Ct. at 2603.

■ We find that the district court did not abuse its discretion in determining that appellants' motion to intervene was untimely. This complex suit has extended over more than a decade and is now in its final stages. The settlement agreement culminated years of negotiation concerning the manner of restitution, the mechanics of distribution of the overcharge refunds, and the procedures for refunds by DOE. The district court reasonably found that the restitutionary phase of the underlying proceedings had been pending for over four years before appellants sought to intervene.

Appellants unsuccessfully argued that there was a "third phase" in the M.D.L. 378 proceedings, a more recent phase concerning the claims of nonparties (such as appellants) to funds under DOE's control. We agree with the district court that these claims were an integral part of the entire plan of restitution. Like the Second Circuit, we recognize that "post-judgment intervention is generally disfavored because it fosters delay and prejudice to existing parties." *Farmland Dairies*, 847 F.2d at 1044, citing *United States v. Yonkers Board of Education*, 801 F.2d 593, 596 (2d Cir.1986). We follow the Second Circuit in extending that general disfavor to post-settlement agreement intervention because it would jeopardize the settlement and prejudice the interests of the parties. *Id.* Even if we were to agree with the time distinctions being made by appellants, therefore, we would still hold that the district court did not abuse its discretion in denying intervention sought four years after the restitutionary phase had begun and one year after court approval of the Settlement Agreement. *Accord Bloomington, Ind. v. Westinghouse Electric Corp.*, 824 F.2d 531, 535 (7th Cir.1987) (untimely motion to intervene two years after suit was initiated, almost a year after start of settlement negotiations, even though settlement was not concluded); *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983) (untimely motion to intervene filed one day after final hearing for approval of consent decree); *Michigan Association for Retarded Citizens v. Smith*, 657 F.2d 102, 105 (6th Cir.1981) (untimely motion to intervene one month after court approval of settlement).

The district court also found that appellants knew or should have known of the pendency of the issues because their counsel had participated in the M.D.L. 378 proceedings. The record supports these find-

ings; it also reflects that several entities within the Utilities, Transporters and Manufacturers were directly involved in the OHA proceedings concerning refund procedures and were granted intervention in the case below.

It is significant that the district court granted appellants leave to participate as *amici curiae*. Court permission to submit arguments on the merits has reduced or eliminated any prejudice to appellants in not being heard. Moreover, we find no unusual circumstances herein that would lead us to find that intervention was timely.

In light of appellants' prior awareness of the issues it now wishes to raise through intervention at this late stage in the restitutionary phase, issues it has in fact raised as *amici*, we hold that the district court did not abuse its discretion in finding the application for intervention untimely.

### B. Adequate Representation

■ Failure to satisfy the requirement of timeliness or any one of the other requisites of Rule 24 is a sufficient ground to deny an application for intervention. *Farmland Dairies v. Commissioner*, 847 F.2d at 1043, citing *United States v. New York*, 820 F.2d 554, 556 (2d Cir.1987); *United States v. City of Chicago*, 798 F.2d 969, 972 (7th Cir.1986), *cert. denied sub nom. O'Sullivan v. United States*, —— U.S. ——, 108 S.Ct. 771, 98 L.Ed.2d 858 (1988).

The district court went beyond the findings of untimeliness, however, and denied intervention as well because appellants' interests were adequately represented by existing parties.

> The Department of Energy has filed a comprehensive response to the States' Motion in which DOE argues that OHA may grant refunds to end-users without requiring an affirmative demonstration of injury. Merely because movants might argue the matter differently is insufficient grounds for intervention. Moreover, ... the Court has granted movants leave to participate as amici and will consider their briefs on the issues.

Memorandum and Order of July 23, 1987, at 1–2.

■ Appellants argue that DOE, which has opposed the States' Motion, has not adequately represented the interests of Utilities, Transporters and Manufacturers in three ways: (1) it failed to challenge the jurisdiction of the district court; (2) it failed to argue that the presumption of injury is a conclusive, rather than a rebuttable, presumption; and (3) the economic public interest of DOE is adverse to the interests of these appellants.

Although the Supreme Court has created a minimal burden on a proposed intervenor of showing "that representation of his interest 'may be' inadequate," *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972), appellants herein have not met that burden. In the first place, this court addressed the issue of the district court's jurisdiction and found that it was not lacking. Secondly, the district court granted appellants *amicus* status to present their arguments; thus any position not argued by DOE could have been asserted by appellants themselves before the district court. And finally, the interest of DOE in carrying out the terms and intent of the Settlement Agreement cannot be construed as adverse to the interests of appellants. The Second Circuit has recently expressed this position aptly:

> We think API misperceives the concept of an interest "adequately represented" within the meaning of Rule 24. A putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party. So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented.

*Natural Resources Defense Council v. N.Y. Dep't of Environmental Conservation*, 834 F.2d 60, 61–62 (2d Cir.1987).

DOE has argued vigorously and thoroughly against the States' Motion. Appellants simply have not established that DOE does not adequately protect their interest in moving to the same ultimate objective of opposing the states' interpretation of the Agreement. *See Bradley v. Milliken,* 828 F.2d 1186, 1192–93 (6th Cir.1987).

### Conclusion

We find that the Utilities, Transporters and Manufacturers failed to establish a right to intervene under Rule 24 of the Federal Rules of Civil Procedure. Consequently, we hold that the district court did not abuse its discretion in denying appellants' application for intervention in TECA No. 10–76.